LAND, J.
 

 This is a concursus proceeding brought by plaintiff, who is the subcontractor of the defendant W. S. Bonner, in order to recover certain amounts for labor and work performed in the construction of a graveled macadam highway in the parish of St. John the Baptist, and to have recognized and enforced the lien claimed by plaintiff, on the road in question.
 

 On January 30, 1918, W. S. Bonner entered; into a written contract, under Act 49 of 1910, with the state of Louisiana, through its state highway engineer and department, and with the police jury of the parish of St. John the Baptist, for the construction of this road.
 

 Bonner gave bond with the United States Fidelity & Guaranty Company as surety for the performance of the work and for the payment of all workmen and furnishers of material and supplies; and in February, 1918, this contract was sublet by Bonner to plaintiff, who in turn gave similar bond as indemnity to Bonner, with the Southern Surety Company as surety.
 

 Paxton Miller, subcontractor, and his surety, W. S. Bonner, the contractor, and his surety, the state of Louisiana, through' its state highway engineer and department, the police-jury of the parish of St. John the Baptist, through its president, and intervening claimants are parties to the concursus proceeding, in which plaintiff seeks to be paid by privilege and preference to the interveners, and to have canceled ' and erased their recorded claims and asserted privileges on the public highway for material, supplies, labor, and money for the payment of labor furnished by interveners to plaintiff, the subcontractor.
 

 Interveners seek to recover the amount of' their respective claims against the defendaht W. S. Bonner, the contractor, and the surety-on his bond, against Paxton Miller, subcontractor, and the surety on his bond, and against the state highway department.
 

 Judgment was rendered in the lower court.
 
 *339
 
 in favor of Miller, plaintiff, and the Interstate Trust & Banking Company, the assignee of Miller, and against the defendant Bonner and his surety, the United States Fidelity & Guaranty Company, in the sum of $15,605.86, and in favor of Miller and the bank against the state highway department, in the sum of $5,-188.93, and setting aside the final estimate of the highway department.
 

 Judgment was rendered, also in favor of Augustin Lasseigne, intervener, for $3,209.27, in favor of Beraud L. Mestayer, intervener, for $152.75, and in favor of the other interveners for the full amounts sued for, against W. S. Bonner, contractor, and his surety, and against Paxton Miller, subcontractor, and his surety in solido, and it is ordered in said judgment that interveners be paid their claims by preference and priority over all other claimants.
 

 From this judgment both of the surety companies - and the state highway department have appealed. The Interstate Trust & Banking Company, as assignee of Miller, has filed a separate appeal in case No. 27729, which is consolidated with the present appeal, No. 27080. Bonner has not appealed.
 

 1. The defendant Bonner and his' surety, the United States Fidelity & Guaranty Company, and the state highway department, through its engineer, excepted to the petition of plaintiff, Paxton Miller, on the grounds that said petition is vague and indefinite and fails to disclose a cause of action; that there is misjoinder and confusion of causes of action, and misjoinder of defendants; and that plaintiff has mistaken his cause of action, if any he has.
 

 (a) This is clearly a eoncursus proceeding, the object of which is to adjust in one common proceeding, and to settle by one and the same judgment the conflicting claims of all of the parties. Act 262 of 1916, § 3.
 

 (b) As this is a eoncursus proceeding, there is no misjoinder and confusion of actions, nor misjoinder of parties, as the principals, the contractor and subcontractor and their respective sureties, the police jury of St. John the Baptist, the state highway department, and the interveners are necessary parties and had-to'be cited. State v. Jackson & Co., 137 La. 931, 69 So. 751.
 

 (c) The petition of plaintff in our opinion is sufficiently clear and definite as to the cause of action, which is for balance due plaintiff, under itemized statements, for labor and work performed by him as subcontractor in the construction of the highway. ,
 

 As neither Act 49^ of 1910, nor arar3249 and 3272 of the Civil Code, create liens on “public works,” and as the Act 134 of 1880 leaves out the word “roads,” no- lien on the public road constructed in this case is given; it being well established that public property does not come under the operation of statutes creating mechanic’s or other liens, unless expressly so provided. State v. Jack-Jack& Co., 137 La. 931, 69 So. 751.
 

 The allegations of plaintiff and of interveners as to their superior liens on the public road constructed are not to be considered, therefore, in the nature of well-pleaded facts, which must be accepted as true, in disposing of the exceptions of no cause of action in this case, but merely as erroneous conclusions of law.
 

 It follows, necessarily, that a cause of action, as to the alleged right of payment by priority and by lien or privilege of the claims of plaintiff and of the interveners, is not disclosed in the petitions of either.
 

 2. The exceptions of no cause of action pleaded to plaintiff’s petition by defendant Bonner and his surety, the United States Fidelity & Guaranty Company, were referred to the merits. In discussing these exceptions, it becomes our duty, therefore, t,o consider the following special defense set up in the answer of the surety company:
 

 “Respondent particularly denies that the said bond was or is in favor, or inured to the benefit of the plaintiff, or of any of the subcontractors
 
 *341
 
 or materialmen working or claiming under him, and further denies that said bdnd inures to their benefit or to the benefit of any of them.”
 

 It is provided in section 5 of Act 49 of 1910, under which the contract for the construction of the highway has been made, that:
 

 “The successful bidder shall be required to furnish bond of a surety company authorized to do business in Louisiana, in a sum equal to one-half of the amount of the contract awarded, conditioned that such work shall be performed in accordance with the plans, specifications and the terms of the contract, and no party bidding for the work shall be accepted as surety on the required bond.”
 

 Section 10 of said act declares:
 

 “That every contract for highway improvement to be made under the provisions of this act shall be made in the name of the state of Louisiana signed by the state highway engineer and the contracting parties with the written approval of the president of the police jury of the parish, or of the mayor or other governing authority of the city, town or village wherein the work is to be done.”
 

 It is clear from these provisions that the bond required by the statute must be made in favor of the state, as the only obligee, and must be conditioned solely as to the faithful performance of the contract by the successful bidder.
 

 The state highway department, however, has required of the contractor in this case, not only the assumpsit of the statutory condition as to the performance of the contract, but has exacted the superadded condition that Bonner “shall pay all sums due on materials and supplies used and for wages earned by laborers and workmen employed upon the work to be done.”
 

 The bond contains also stipulations pour autrui in favor of “all subcontractors, workmen, laborers, mechanics and furnishers of material and supplies.” It is a well-settled •doctrine, not only in this state, but in the other states of the Union, that where a bond is given under the authority of a law, whatever is included in the bond and which is not required by the law must be read out of it, and whatever is not expressed and ought to have been incorporated must be read as if inserted into it. Macready v. Schenk, 41 La. Ann. 456, 6 So. 517; Slocomb v. Robert, 16 La. 173; Davis v. West Louisiana Bank et al., 155 La. 245, 99 So. 207, Id., 155 La. 252, 99 So. 210; Corpus Juris, vol. 9, par. 56; Boswell v. Lainhart et al., 2 La. 397.
 

 It follows, therefore, that the Bonner bond must be given the effect which in reason must have been intended by the statute.
 

 Reading out of the bond all superadded conditions and stipulations, we have left intact a purely statutory bond, executed in favor of the state of Louisiana, and conditioned for the faithful performance of the contract to build this highway in accordance with the plans, specifications, and terms of the contract.
 

 The highway has been completed by the plaintiff, the subcontractor, in fact, was built entirely by him, and was accepted by the proper authorities before the institution of the present suit.
 

 As said in State v. Jackson & Co., 137 La. 945, 69 So. 756, in construing Act 49 of 1910:
 

 “Such being the case, no one could bring suit upon it [the bond] except the state of Louisiana; and the state, as has been already shown, could do so only in vindication of whatever pecuniary interest she might have in the matter; and the only pecuniary interest she could possibly have had in the matter would have been for the failure to do the work stipulated to be done under the contract. This clause a§ to laborers, materialmen, and subcontractors, therefore, aclded nothing to the bond, and is int consequence mere surplusage in it.”
 

 As the bond of Bonner is a purely statutory bond, there is no privity of contract between Bonner and his surety and the plaintiff, the subcontractor, and the interveners, the furnishers of labor, supplies, and materials, since the statute' is read into the bond, which stipulates nothing in their favor, the state of Louisiana being the sole obligee under the statute.
 

 
 *343
 
 It follows, therefore, that the exceptions of no cause of action tendered to the petition of plaintiff, the subcontractor, as well as the exceptions of no cause of action tendered by Bonner and his surety to the petitions of interveners for labor, material, and supplies, are well-founded, as far as any action on Bonner’s bond is concerned, and these exceptions are sustained to that extent.
 

 3. The exceptions of no cause of action filed by the state highway engineer to the petition of plaintiff, the subcontractor, and to the petitions of interveners, were all referred to the. merits. As there is no lien or privilege on the highway, and as the state highway engineer admits in his answer a balance due to the contractor of $849.39, and has deposited same in the registry of the court, there is a confessed indebtedness, at least to this extent, which must be prorated necessarily among the various claimants.
 

 ■ Moreover, as against the state highway department, the petitions of plaintiff and of interveners clearly and sufficiently set out their respective claims and causes of action.
 

 4. The Southern Surety Company excepted to certain alleged calls in warranty made by Bonner and his surety upon Paxton Miller and his surety, on the ground that neither Bonner nor the United States Fidelity & Guaranty Company has any right of action against exceptor, either directly or in warranty, and, in the alternative, exceptor pleads tha.t the demands herein made are premature.
 

 Bonner sublet his contract to .Miller, who took over the contract “under the same terms and conditions and stipulations as are imposed thereunder by the state highway department upon said W. S. Bonner.”
 

 It was also agreed between the parties—
 

 “that Paxton Miller will furnish a surety bond in the sum of seventeen thousand five hundred dollars ($17,500), in a solvent surety company, indemnifying the said W. S. Bonner against any loss which he may suffer on account of the failure of the said Paxton Miller to carry out all of the said conditions, stipulations, and obligations in the contract between said W. S. Bonner and the state highway department in the building and completion of said graveled macadam road herein sublet to said Paxton Miller.”
 

 Miller and the Southern Surety Company executed a bond, in which they bound themselves in solido “unto W. S. Bonner -and unto all subcontractors, workmen, laborers, mechanics and furnishers of material and supplies, jointly in the full sum of seventeen thousand five hundred dollars ($17,500).”
 

 This bond was conditioned that Paxton Miller shall well and truly perform his contract, “and shall pay all sums due on materials and supplies used, and for wages earned by laborers and workmen employed upon the work to be done.”
 

 There is no provision in Act 49 of 1910 requiring a subcontractor to give bond to a contractor. The bond in question, therefore, is conventional and not statutory, and its provisions, as written therein, necessarily constitute the law of the case between the parties, when considered in connection with the contract of Bonner. Although Bonner is not liable to Miller or to the interveners on his bond signed by the United States Fidelity & Guaranty Company as surety, yet he is personally liable to them as contractor in the case.
 

 As Bonner is expressly named as obligee in the Miller bond, and as this bond is also in favor of “all subcontractors, workmen, laborers, mechanics and furnishers of material and supplies jointly,” it is clear that Bonner and the interveners have a cause of action upon the bond against both Miller and his surety, if Miller has failed, as he has done, to comply with the condition in the bond that he “shall pay all sums due on materials and supplies used and for wages earned by laborers and workmen employed upon the work to be done.”
 

 Bonner, the defendant, prays in his answer that plaintiff’s claim against him be reduced to $5,006.35; that the same be imputed to the payment of proved claims, if
 
 *345
 
 any, of materialmen and laborers; that any claims of materialmen and laborers above said amount against defendant be dismissed; and “that; in the alternative, if judgment be given against defendant in any amount in favor of said claimants, over and above $5,-00G.35, then, in that event, defendant prays for judgment for said amounts against Paxton Miller and the Southern Surety Company in solido.”
 

 This prayer is found under article 17 of defendant’s answer, in which defendant assumes the position of plaintiff in reeonvention. We do not consider such prayer, technically, as a call in warranty. It is more in the nature of a reconventional demand. Bonner, having been brought into the concursus proceeding as a defendant, must necessarily assert any counterclaim against plaintiff and the surety on his bond in reconvention, all necessary parties being in court in one common proceeding.
 

 It seems to us that Bonner’s demand against Miller and the surety on his bond is based rather upon privity of contract between the parties than upon any contract of warranty in the bond.
 

 It is true that, in a certain sense, the bond of Miller warrants or protects defendant against claims of materialmen, furnishers of supplies, and of laborers, but, strictly speaking, it is an indemnity bond.
 

 The alternative plea of prematurity, however, in our opinion, finds no proper place in a concursus proceeding, because of the cumulation of causes of action therein, and because of the necessity of presenting and deciding, in one common proceeding, and by one and the same judgment, all claims and counterclaims which each of the parties may urge against the others. The exception of no cause of action as to the reconventional demand of Bonner against Miller and the surety on his bond is therefore overruled. As there is no privity of contract between the United States Fidelity & Guaranty Company, surety on Bonner’s bond, and Miller and his surety, the exception of no cause of action urged by the Southern Surety Company against the reconventional demand of the former company is sustained.-
 

 5. The exceptions of'no cause of action tendered by the Southern Surety Company, Bonner and his surety, and Duncan Buie, state highway engineer, against the various interventions filed in the concursus proceedings, were referred to the merits.
 

 The contention of the Southern Surety Company and of the other exceptors is that “material” and “supplies” are words identical in meaning, and refer only to “materials furnished the contractor and which went into the road,” and that only claims for “labor on the job” are recoverable against Bonner, contractor, and his surety, and Miller, subcontractor, and his surety, the Southern Surety Company, and the state highway department..
 

 It is stated in the brief submitted on behalf of the Southern Surety Company, at page 9, that:
 

 “There is no lien or privilege granted to any one under any article of the Civil Code on a public road, and therefore the only claim which any one could have against the surety on Miller’s bond would be such as might be derived from the bond itself.”
 

 As this bond is purely conventional, we agree with counsel for the Southern Surety Company that it is the law that governs the claims of the interveners for labor, material, and supplies, when the Boniier contract, Which has been read into the bond, is considered.
 

 The condition of the bond is that Paxton Miller, as principal, “shall pay all sums due on materials and supplies used, and for wages earned by laborers and workmen employed upon the work to be done.”
 

 Paxton Miller, as principal in said bond, binds himself well and truly to perform Bon
 
 *347
 
 ner’s contract, made and entered into on the 30th day of January, 1918, to construct the St. John the Baptist portion of the New Orleans-Baton Rouge highway, “according to the stipulations recited in said contract, attached and made a part hereof.” The contract, therefore, is read into the bond in this ease. It is provided in Bonner’s contract that:
 

 “The contractor shall, any time during the life of this contract, be required within ten days (10) notice, to secure, use and operate, as may be directed, by the state highway engineer, any tools or implements, or supplies, such as road rollers, blade machines, barrows, scarifiers, road hones, road drags, teams, labor, etc., that may be decided necessary for the proper construction and maintenance of any part of the work.”
 

 “Teams” and “labor” which may be necessary for the proper construction of any part of the work clearly come within the definition of “supplies,” as used in the Bonner contract, which Miller and his surety have bound themselves in solido to perform, as these terms do not fall within the category of “any tools or implements” secured, used, or operated in the building of this road.
 

 As a matter of common sense and of common experience, teams cannot be supplied for public work without being fed and shod and properly cared for. Nor are wagons and carts available for use in road building unless kept in repair. Regardless of what courts in other jurisdictions may have held as to the meaning of “material” or “supplies” under special statutes creating liens, we are dealing in this ease with a special contract which clearly designates “labor” and “teams” as supplies.
 

 Consequently, any labor expended in connection with the repair of wagons, carts, road machines, shoeing of mules, and treating sick mules, as well as feed furnished to mules, is a necessary expense incidental to and closely connected with the service, use, and operation of “teams” on this public road, i.e., an expense inseparable from “teams” as “supplies” under the contract, and the furnishers of such supplies have a direct action on Miller’s bond, which is made in their favor, without any subrogation from the contractor or subcontractor, as much so as a laborer on the works would have such direct action.
 

 But neither the furnishing of “money” nor of “merchandise” to laborers is included within the terms of the bond in this case as “supplies,” but, unquestionably, the rental for “a team,” as furnishing “supplies,” would fall within its obligation, as far as the surety is concerned. Nor would subrogation in such a case be necessary, as the contractor or subcontractor must, rent teams for the road, if he does not own them, and it is made the duty of the contractor and subcontractor in the contract to “secure, use, and operate teams” upon the work.
 

 We will now consider the claims of the various interveners in the case:
 

 1. Pierre Raoul Chamber, $87.50. This, account is for repairs to wagons, road machines, and for shoeing mules. Tr. vol. 1, 176, 177, volume 4, 230, 231. This work was done for Miller, subcontractor.
 

 2. Louis Levy Grocery Company, $171.93. This account is for feed supplied Miller, subcontractor, for mules worked on the road. Tr. vol. 1, 229-232, volume 4, 237.
 

 3. The Consolidated Companies, Inc., $835.-75. This account is also for feed furnished Miller, subcontractor, for mules, through the Lutcher Wholesale Grocery branch of the Consolidated Companies, Inc., vol. 1, 189, volumes
 
 4r
 
 164r-168. For the reasons above assigned, the abovp claims are allowed against Miller and the Southern Surety Company, surety on his bond.
 

 4. Adam Alexandre, $262.25. This account is for services as cart repairer and foreman, from April 7, 1919, to August
 
 14,
 
 1919, at $75 per month. Tr. vol. 1, 218. The obligation of Paxton Miller and his surety is “to
 
 *349
 
 pay all sums due for wages earned by laborers and workmen employed on the work.” Tr. vol. 1, 164. Alexandre did not work on-the main road, it is- true, but on a way required to be built in order to reach the gravel pit. As this was essential to the road work, the claim is allowed against Miller and his surety.
 

 5. Dr. W. L. Lion, $1,639.26. The account of Dr. Lion consists of $1,227.76 cash loaned' to Miller to pay laborers on the road, and of $411.50 for services as timekeeper and as* sistant foreman on the works. Tr. vol. 1, 225-260, volume 4, 239-250.
 

 The claim of $1,227.76 is allowed against Miller personally, but is rejected as to the Southern Surety Company, surety ou Miller’s bond, as no assignment was made to Dr. Lion of their claims by laborors. R. C. C. art. 2645.
 

 The term of $411.50 is allowed against Miller and his surety.
 

 6. Augustin Lasseigne, $4,782.27. Augustin Lasseigne died November 28, 1925, and George A. Lasseigne, Palmyre Lasseigne, wife of Fernán A. Aycock, and Esther Lasseigne, wife of Joseph M. Oury, were duly recognized as sole heirs of the deceased and sent into possession of his estate. All of this claim was waived except two items, one of $2,576-77, and the other of $632.50 for rent of teams and for labor.
 

 It is contended by the Southern Surety Company that item $2,576.77' was for work done by Albert Montegut, who was paid by Lasseigne, and that no assignment was taken from the laborers. The item of $2,576.77 is the sum paid by Lasseigne to Montegut for rent of teams hauling gravel, and for labor on the Bell Point and Jacobtown section of the road, from August 15 to September 11, 1919, and the item of $632.50 is for work done on the Hope Plantation and Mount Airy section, from June 7 to August 10, 1919, by teams owned by Lasseigne. Tr. vol. 4, 142.
 

 From the testimony of Lasseigne it appears that Miller, subcontractor, stopped work on the road from lack of funds, and that Lasseigne, who was president of the police jury at the time, employed Montegut to do the work, as the citizens were complaining about its cessation. -
 

 Lasseigne guaranteed the payment for the teams and labor, and, when Montegut presented him with the bills, he directed Monte-gut to obtain the approval of Miller, the subcontractor, which was done, and the bills to the amount of $2,576.77 were then paid by Lasseigne to Montegut. As Lasseigne took no assignment from the laborers as to this amount, his claim as to the item of $2,576.77 is rejected as against the Southern Surety Company, but is allowed -against Miller personally.
 

 As to the item of $632.50, it appears from the testimony of Dr. Lion that Miller, subcontractor, hired the teams of Lasseigne, and that Lion, as assistant manager for Miller, supervised the work done by these teams on the Hope Plantation and Mount Airy section of the road. Tr. vol. 4, 159-162. Therefore Lasseigne, as furnisher of “teams” as “supplies,” has a direct action on Miller’s bond for the item of $632.50, which is allowed against Miller and his surety.
 

 7. Brady-Granier Company, Limited, $316.-40. This is a claim for merchandise delivered to laborers on orders of Miller, subcontractor, for cash advanced to Miller, and for merchandise delivered to Mrs. Miller.
 

 As no assignment from the laborers was taken, the claim is rejected as to the Southern Surety Company, but is allowed against Miller personally. Tr. vol. 4, 222-228.
 

 8. Henry J. Tregre, $503.69. This claim is for merchandise furnished to laborers, for rent of cabins for laborers, for board of Miller, for rent of a mule lot, and for feed for mules, and is charged to Miller, subcontractor.
 

 
 *351
 
 No assignment was taken from the laborers, and the claim is rejected as against the Southern Surety Company, except for mule feed amounting to $100.50, but is allowed as against Miller personally. The account includes $1 for dinner for Miller, $30 for board of Miller for one month, and $12.29 for invoice of Whitney & Sloo.for collars furnished Miller, or a total of $43.29. Tr. vol. 4, 185-190, 191-193, volume 2, 22-28.
 

 9. San Francisco Planting and Manufacturing .Company, $1,083.35. This item consists of $540 for rental of carts, $467.55 for labor furnished, and $75.50 cash advanced to Miller by said company for repairing road machinery.
 

 The carts and labor were furnished directly to Miller by this company, and said company is entitled to recover for the items of $540 and $467.55, or the sum of $1,007.55, against Miller and his surety. Tr. vol. 4, 195-203. The claim against the Southern Surety Company as 'to the sum of $75.50 loaned Miller for repairing road machinery is rejected as to the surety company, but is allowed as against Miller personally, as money loaned the subcontractor is not “supplies” furnished under the 'bond.
 

 10. T. J. Landaiche, $94.65. This claim,is based on merchandise sold to laborers on orders of Miller and Miller’s foreman. In the absence of assignment, from the laborers, the claim is rejected as against the Southern Surety Company, but is allowed as against Miller personally. Tr. vol. 1, 244.
 

 11. Beraud L. Mestayer, $131.50. This claim consists of the following items:
 

 1. Vaccination supplies furnished Miller and for vaccination of 36 mules employed on road ......................................... $12 30
 

 Mestayer claims to be the assignee of the following accounts:
 

 2. From J. J. Reine for removing fence from right of way of road and rebuilding same 19 90
 

 3. From Mike Bourgeois for merchandise furnished laborers on Miller’s orders........ 36 75
 

 4. From Woodland Pit.
 
 &
 
 Mfg. Co. for teams and labor .................................... 22 00
 

 5. From George Coureau, Jitney service for transporting laborers....................... 18 00
 

 6. From Joe Mouton, care of sick mule,........ 6 00
 

 7. From Leon Godchaux Co. for cement........ 36 30
 

 The claim of Godchaux Company for cement is admitted.
 

 We see no good reason why the account for serum and the charge for the vaccination of the mules use.d on the work should not be allowed. It is a necessary claim, and is incidental to the obligation of Miller and his surety to furnish “teams” as “supplies.” The entire work on the St. John road' might have been stopped by infectious disease among the mules, unless proper precaution had been taken to preserve the health of the animals.
 

 The five claims from 2 to 6, inclusive, were assigned by their owners on February 24, 1924, to Mestayer by private act of sale and transfer, which was duly acknowledged or proven before W. S. Frazee, notary public.
 

 The Southern Surety Company contends that these claims “were never paid by Mestayer to these people, and therefore the assignments, if otherwise proven, which they were not, are of no value,” citing article 2160 of the Civil Code.
 

 Mestayer does not rely in this case upon any conventional subrogation by authentic act, but claims as purchaser or transferee of a credit or right under articles 2642, 2645, and 2646 of the Civil Code.
 

 It is elementary that the assignee of a debt not negotiable may sue in his own name, or in that of his assignor. Sedwell’s Assignee v. Moore, 10 Mart. (O. S.) 117; Kilgour v. Ratcliff’s Heirs, 2 Mart. (N. S.) 292, 296. No particular form and specific instrument in writing is required in the assignment or transfer of debts. Gray v. Trafton et al., 12 Mart. (O. S.) 702.
 

 The evidence shows, however, that Mestayer paid nothing for these assignments, and we agree with the surety company that he has no right to sue upon these claims.
 

 The entire claim is rejected both as against
 
 *353
 
 Miller and the surety on his bond, except as to item No. 1 of $12.30, and as to item No. 7 for $36.30, which are allowed against Miller and the Southern Surety Company.
 

 6. The cost of construction of the highway, as figured in Bonner’s bid, and as based upon unit prices and estimated quantities, is the sum of $48,481. Tr. vol. 1, 44-47. The original estimate as to quantities, upon which Bonner’s bid is predicated, was made by AV. J. Cooper, assistant state highway engineer. Tr. vol. 3, 126, 127.
 

 As appears from answers of Duncan Buie, state highway engineer, to interrogatories propounded to him, the total cost of actual construction of highway, exclusive of gravel, ■which was furnished by the parish of St. John the Baptist, was the sum of $51,620.33 • — an excess of $3,139.33 over the estimated cost. Tr. vol. 2, 109, 110.
 

 The state contributed $9,238.39, and the parish $42,3S1.94, of the sum of $51,620.33, or the total actual cost, as determined by the state highway engineer, in his sixteenth or final estimate, which shows a balance due by the state to Bonner, the contractor, of $849.37. Tr. vol. 1, 93, 94.
 

 The police jury of St. John the Baptist parish paid all bills for the construction of the road for which it was responsible.
 

 Richard Pearce, the executive manager, office man, and general bookkeeper for Bonner, has accepted as correct the quantity estimates and unit prices fixed in the sixteenth or final estimate, in arrriving at balance due by Bonner to Paxton Miller, the plaintiff, Tr. vol. 4, 346, 347, 354.
 

 These estimates and prices are binding, therefore, upon Bonner in his accounting with the state highway department, which has deposited in court the balance of $849.37 as due him by the state. This balance, in our opinion, is correct.
 

 7. The plaintiff, Paxton Miller, itemizes his account against Bonner as follows:
 

 Up to December 1, 1918, when work was discontinued on account oí war conditions, 20 pe,r cent, reserve.................$ 6,188 93
 

 Work done irom April 1, 1919, when work was resumed, as follows:
 

 11,65» cubic yards, gravel, laid at 75 cents a yard ...................................... 8,741 25
 

 2,194 yards, binder, at 30 cents a yard...... 1,079 00
 

 Regrading 7.77 miles at $2.00 per station of 100 feét................................... 820 00
 

 1 cent per yard per station for overhaul on 11,655 yards pe,r 100 feet, equal to .4436 cents per yard.............................. 5,170 16
 

 Or
 
 'a.
 
 total of.................................$20,999 34
 

 Subject to following payments and credits for advances:
 

 April 2, 1919, balance due W. S. Bonner.. $2,392 68
 

 April 30, 1919, advances, April.............. 1,666 22
 

 May 31, 1919, advances, May.................. 1,882 73
 

 Or a total of..................................$ 5,941 63
 

 Leaving balance due Miller by Bonner of.. $15,057 71 —with legal interest from June 1, 1919.
 

 The contention of plaintiff that Bonner owes to him the 20 per cent, reserve of $5,-188.93, merely because this reserve appears asa credit of Bonner in the tenth partial estimate of date of December 2, 1918, approved by AA. J. McDaniel, resident engineer, and by Bonner as contractor, is without any foundation, in our opinion. Tr. vol. 3, 87, 88, 89.
 

 It is provided in the contract with Bonner that, although monthly estimates may be made so long as the work is progressing satisfactorily, and that a certificate shall issue, if requested by the contractor, directed to the state treasurer, for the payment to the contractor of 80 per cent, of the contract price of the amount of the work done, yet it is expressly declared in said contract that “said approximate estimate, made from month to month, shall not in any respect he taken as an admission by the state highway engineer of the work done, or of its quantity, quality, or sufficiency, 'or of the amount due the contractor, nor as an acceptance of the work, or release of the contractor from his responsibilities in any respect thereto, but at the time of making the final estimate, the whole, of the work and all part relating thereto shall, be subject to revision and ad
 
 *355
 
 justment by the state highway engineer.” Tr. vol. 1, 15.
 

 It is further provided in the contract with Bonner that:
 

 “Should any differences arise between the contractor and resident engineer, they shall be referred to the state highway engineer, whose decision shall be final and binding upon all parties. Any differences as to measurements or questions in dispute will be determined by the state highway engineer, who will act as arbitrator between the contractor and the state.” Tr. vol. 1, 12.
 

 Miller, as subcontractor, is as much bound by these stipulations as Bonner is bound as contractor.
 

 For these reasons, the tenth and fifteenth partial estimates, made by resident engineers, hired and paid by Bonner, are not binding upon any one as to quantities, but are purely tentative, and subject to revision and correction in the final estimate, as provided in the contract. Tr. vol. 1, 91. The wisdom of these provisions, as a protection to the state against “any fraud in construction, or in obtaining payments during this contract,” is fully demonstrated in the present case by the testimony of Richard Pearce.
 

 As already stated, this witness was the executive manager, office man, and general bookkeeper for Bonner, the contractor. Pearce did not hesitate, when on the witness stand, to testify that he obtained “a big estimate” from one of the resident engineers on this work, upon his mere request. The witness admits that this estimate was written by himself, and was larger than Bonner was entitled to, and that he and the resident engineer both knew that such was the ease at the time. Tr. vol. 4, 351-358.
 

 The name of this resident engineer appears upon the first ten partial estimates in this case. Tr. vol. 1, 64 — 82.
 

 Another resident engineer on the work, who was in Tennessee at the time, telephoned Pearce “to supply the amount of work up to a certain date,” and, ¿s testified by this witness, “he (the engineer) issued his estimate, I think, from Tennessee.” Tr. vol. 4, 351-358. This is the same resident engineer who made the fifteenth partial estimate in this case. Tr. vol. 1, 91.
 

 While Pearce states that he did not attempt to get more out of the Tennessee estimate than he was entitled to, and furnished the correct number of stations of gravel that had been put down, yet, in making the estimate, the engineer was not relying upon his own individual inspection of the work, but upon that of a witness, who has confessed his participation in obtaining, knowingly and intentionally, at least one fraudulent estimate as to the work done.
 

 Taking into consideration the circumstances surrounding the making of the fifteenth partial estimate, and the subsequent correction by the state highway engineer of the quantities allowed therein by the resident engineer, we are compelled to conclude that the data furnished by Pearce to the resident engineer in Tennessee was inflated and incorrect.
 

 Pearce admits that the checking of the estimates by the state highway engineer was accurate. Tr. vol. 4, 354. The charge by plaintiff that the changes made by the state highway engineer in the fifteenth partial estimate were arbitrary and wholly unjustifiable must fall to the ground, in the presence of the proof by the state of fraud' in this case, and in view of the fact that the sixteenth final estimate allows an increase of $3,139.33 over and above the contract price, as estimated by the contractor. This increase was more than sufficient to include the difference in width between the 26-foot road actually constructed for 7.77 miles, and the 24-foot road originally contemplated by the Bonner contract.
 

 The difference in width of 2 feet by 18 inches in depth for the 374 stations would make 4,100 cubic yards more of embankment earth, which, at 30 cents a yard, would
 
 *357
 
 amount to $1,230. Add to this 330 extra' yards of gravel at $1.45 per yard, or the sum of $478.50, and the result will be a total of $1,708.50, and will still leave" a margin of $1,430.83 over and above the estimated contract price.
 

 Plaintiff in a supplemental brief contends we should adopt the fifteenth partial estimate, and should render judgment thereon against the Louisiana highway commission in favor of plaintiff Interstate Trust & Banking Company and of Bonner.
 

 As, in our opinion, the sixteenth and final estimate made by the state highway engineer must prevail, the settlement of the accounts between Miller and Bonner must be made upon this basis, and in accordance with the agreement between the parties for “1 cent per yard per station for overhaul, and regrading road at $2 per station.” The latter agreement is confirmed by letter of Bonner to Miller of date April 25, 1918. Tr. vol. 1, 60. Upon this basis, we adopt as correct the following statement of accounts between parties:
 

 1. Amount due by state highway commission to Bonner...........................$ 849 37
 

 2. 10,118 cu. yds. washed gravel in place beiore April 1, 1919, at $.75 per yard.. 7,588 50
 

 3. 2,529% cu. yds. binder (1/4 clay to each cu. yd. gravel) at $.50 per yard......... 1,264 75
 

 4. $2.00 per station of 100 feet for regrading 7.77 miles of road (judicially admitted in article 6 of Bonner’s answer. Tr. Vol. 1, 158)........................... 820 50
 

 5. Overhaul of 10,912 cu. yds. graved (difference between barge and railroad haul) at 1 cent per cu. yd. pe,r station, equivalent to .4436 cents per yard..... 4,840 56
 

 (See admission in article 4 of Bonner’s answer. Tr. vol. 1, 156.)
 

 A total of . ............................. $15,363 68 Credits admitted due Bonner:
 

 1. April 2, 1919, bal........................... $ 2,392 68
 

 2. April 30, 1919, advances................... 1,666 22
 

 3. April 31, 1919, advances................... 1,882 73
 

 A total of .................*.............$ 5,941 63
 

 Balance due Miller of.................$ 9,422 05
 

 (See sixteenth final estimate. Tr. vol. 1, 93.)
 

 For unit prices due Miller under subcontract, see transcript, vol. 1, 52, 53.
 

 For supplemental agreement as to overhaul of gravel, see supplemental agreement, tr. vol. 1, 55, and letter of Bonner to Miller above cited.
 

 All payments for the work done by Miller, subcontractor, were made by the state highway department to Bonner, contractor.
 

 As Bonner obligated himself in the original contract with the state highway department to pay all sums due for labor, material,' and supplies, and as Miller, as subcontractor, assumed in the subcontract this obligation of Bonner, it is clear that each is bound in solido for all amounts for which each may be liable personally.
 

 While it is true that the interveners cannot hold the surety on Miller’s bond liable, without subrogation or assignment, unless the intervener himself is the laborer, or the furnisher of the teams, or of the material used in the construction of the road, yet, as Miller’s bond is an indemnity bond to protect Bonner, the contractor, against the payment of all sums that may be due for the wages of the laborers and for teams and material furnished in the building of this highway, and as this bond is made in favor of Bonner as obligee, it is clear that Bonner may recover judgment against Miller and the Southern Surety Company in solido for all sums for which Miller may be personally responsible in connection with the performance of his subcontract.
 

 The liability of the Southern Surety Company, surety on Miller’s indemnity bond in favor of Bonner, became fixed, as far as Bonner is concerned, upon Miller’s failure to pay the sums due to laborers and the furnishers of teams and material in this case.
 

 With the law of the case settled as to the liability of the respective parties, we may now apply the law to the facts of the case, in the rendition of a proper judgment between all of the conflicting claimants in the concursas proceeding.
 

 
 *359
 
 For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside.
 

 It is now ordered that there be judgment herein in favor of Paxton Miller, Interstate Trust
 
 &
 
 Banking Company, assignee, and against W. S. Bonner, defendant, in the full sum of $9,422.05, with legal interest from judicial demand until paid, and all costs.
 

 It further ordered that there be judgment in favor of each of the interveners hereinafter specially named, with interest and-costs as prayed for, in the following sums, to wit:
 

 1. In favor of George A. Lasseigne, Palmyre Lasseigne, wife of Fernán A. Aycock, and Esther Lasseigne, wife of Joseph M. Oury, the duly recognized and sole heirs of Augustin Lesseigne, in the sum of $3,209.27 against W. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido; and judgment for $632.50 of this amount is hereby rendered in favor of said heirs against Paxton Miller as principal and the Southern Surety Company, surety on his bond, in solido.
 

 2. In favor of Louis ‘Levy Grocery Company in the sum of $171.93 against W. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido, and in said sum against Paxton Miller, as principal, and the Southern Surety Company, surety on his bond, in solido.
 

 3. In favor of Dr. W. L. Lion in the sum of $1,639.26 against IV. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido; and judgment for $411.50 of this amount is hereby rendered in favor of the said Dr. W. L. Lion against Paxton Miller, as principal, and the Southern Surety Company, as surety on his bond, in solido.
 

 4. In favor of Brady-Granier Company, Limited, in the sum of $316.40 against W. S. Bonner; defendant, and Paxton Miller, plaintiff, ■ in solido; and judgment is hereby rendered in favor of the Southern Surety Company, and against said' Brady-Granier Company, rejecting said claim in full as against said surety company, surety on Miller’s bond.
 

 5. In favor” of the Consolidated Companies, Inc., in the sum of $835.75 against W_ S. .Bonner, defendant, and Paxton Miller, plaintiff, in solido, and against Paxton Miller as principal and the Southern Surety Company, surety on his bond, in solido.
 

 6. In favor of Beraud L. Mestayer in the sum of $131.50 against W. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido; and in favor of Beraud L. Mestayer for $48.-60 of said sum against Paxton Miller, as •principal, and the Southern Surety Company, surety on his bond, in solido; and in favor of the Southern Surety Company against Beraud L. Mestayer, rejecting the balance of said claim of $131.50.
 

 7. In favor of the San Francisco Planting & Manufacturing Company in the sum of $1,083.35 against W. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido; and in favor of said company in the sum of $1,-007.55 of said amount against Paxton Miller, as principal, and the Southern Surety Company, surety on his bond, in solido; and in favor of the Southern Surety Company and against said Planting & Manufacturing Company, rejecting the.balance of said claim of $1,083.35, to wit, the sum of $75.
 

 8. In favor of Henry John Tregre against Paxton Miller, plaintiff, and W. S. Bonner, defendant, in solido, in the sum of $472.69 of the sum of $503.69 claimed by intervener, and against Paxton Miller, plaintiff, in the additional sum of $31 for dinner and board; and judgment is hereby rendered in the suns of $100.50 of said sum of $503.69 in favor of Henry John Tregre and against Paxton Miller, as principal, and the Southern Surety Company, surety bn his bond, in solido; and judgment is hereby rendered in favor of said surety company and against said I-Ienry John Tregre rejecting the balance of said- claim of $503.69, or the sum of $403.19.
 

 
 *361
 
 9. In favor of Thomas Ladaiche in the sum of $94.65 against W. S. Bonner, defendant, and Paxton Miller, in solido; and in favor of the Southern Surety Company, surety on Miller’s bond, against the .said Thomas Ladaiche, rejecting said claim in full.
 

 10. In favor of Adam Alexandre in the sum of $262.25 against W. S. Bonner, defendant, and Paxton Miller, in solido, and in said sum against Paxton Miller, as principal, and the Southern Surety Company, surety on his bond, in solido.
 

 11. In favor of P. R. Cambre in the sum of
 
 $87.50
 
 against W. S. Bonner, defendant, and Paxton Miller, plaintiff, in solido, and in said sum against Paxton Miller, as principal, and the Southern Surety Company, as surety on his bond, in solido.
 

 It is further ordered that the demands of Paxton Miller, plaintiff, and of all of the interveners, be rejected as against the United States Fidelity & Guaranty Company, surety on the bond of W. S. Bonner, and that said surety company be decreed as not liable to plaintiff and interveners in this case on said bond. .
 

 It- is further ordered that there be judgment in favor of W. S. Bonner over against Paxton Miller, as principal, and against the Southern Surety Company, surety on his bond, in solido, in the sum of $8,304.55, with costs and legal interest from judicial demand until paid.
 

 It is further ordered that the amount due by the state highway department, now the Louisiana highway commission, be decreed to be the
 
 sum of
 
 $S49.37, and accordingly that there be judgment in favor of Paxton Miller, Interstate Trust & Banking Company, assignee, and in favor of the interveners and claimants hereinabove named, against said state highway department, now the "Louisiana highway commission, in the full sum of $849.37, which has been already deposited in the registry of the lower court.
 

 And it is ordered that the claims of the interveners be first paid and in full, if the funds on hand and to be recovered are sufficient for that purpose, and that the residue, if any, be paid to plaintiff, Paxton Miller, Interstate Trust & Banking Company, assignee.
 

 It is further ordered that if funds on hand and to be recovered shall prove insufficient for the payment of the claims of interveners, then that funds available shall be distributed among the interveners in proportion to the claims of each, which shall be paid pro rata.
 

 It is further ordered that the Interstate Trust & Banking Company be recognized as assignee of Paxton Miller and entitled to such judgment as is rendered herein in favor of Paxton Miller.
 

 Notation on refusal of court to grant a rehearing:
 

 O’NIELL, C. J., and BRUNOT, J., dissent from the ruling that the surety is forbidden to make his obligation more onerous than the statute requires him to make it.