(108 So. 472)

No. 27261.

GUARANTY BANK & TRUST CO. v. CANAL LAND & LIVE STOCK CO. et al.

(March 29, 1926.     Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Subrogation ⬳21—Indorser or surety on note is not entitled to possession of collateral attached until payment of note (Civ. Code, art. 2159).**

Under Civ. Code, art. 2159, indorser or surety on note is not entitled to possession of collateral attached until payment of note, and until then holder may hold collateral.

2. **Bills and notes ⬳256—Holder of note may demand payment of indorser and retain securities pledged, and refusal to surrender securities does not discharge indorser merely offering to pay note.**

Holder of note may demand payment of indorser and retain securities pledged, so that refusal to surrender collateral on offer by indorser to pay note does not discharge indorser, since offer to pay is not equivalent to payment.

3. **New trial ⬳125—Denial of indorser's motion for new trial, based on sale of collateral attached to note after judgment, held properly refused, where motion did not definitely state that collateral had been sold after judgment.**

Where indorser did not state with certainty whether holder of note sold collateral after rendition of judgment against indorser in action on note, court was justified in overruling motion for new trial on claimed ground of sale of collateral.

4. **Subrogation ⬳21—Indorser's right to possession of collateral attached to note will not be determined on appeal, where note was not paid.**

Where indorser's right to possession of collateral attached to note depended on his being subrogated to rights of holder as pledgee, and indorser did not pay note, Supreme Court will not pass on indorser's right to possession, since subrogation does not take place until payment is made, but indorser's rights will be reserved.

O'Niell, C. J., and Land, J., dissenting.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Suit by the Guaranty Bank & Trust Company against the Canal Land & Live Stock Company, J. W. Honeycutt, and another, in solido. Judgment for plaintiff, and defendant Honeycutt appeals. Amended and affirmed.

Thornton, Gist & Richey, of Alexandria, for appellant.

C. K. Staples and Hakenyos, Scott & Provosty, all of Alexandria, for appellee.

OVERTON, J. This is a suit on a promissory note, made by the Canal Land & Live Stock Company, Inc.; through its president, W. R. O'Neal, and indorsed for accommodation by said O'Neal and by J. W. Honeycutt. The note is for $3,000, with 8 per cent. per annum interest from April 10, 1924, the date of its maturity, and contains a stipulation for 10 per cent. attorneys' fees. It is secured by a mortgage note and certain shares of stock. The suit is against the maker and the indorsers in solido, for the amount of the note, including interest and attorneys' fees.

The maker of the note seems to have made no appearance in the trial court, and it does not appear that judgment, as to the maker, was rendered in the case. O'Neal made no appearance, and judgment was renderd by default against him. Honeycutt appeared and filed two exceptions, which he has since abandoned. He then appeared and filed an answer setting up certain defenses, upon which, apparently, he no longer relies. He then filed an amended answer, in which he sets forth substantially that he was willing, and offered, to pay the note sued on on plaintiff's surrendering to him the collateral attached to it, and that, by reason of plaintiff's refusal to surrender the collateral, he is discharged from all liability.

The trial court, after hearing the case, rendered judgment in favor of plaintiff against Honeycutt for the full amount prayed for, with recognition of the right of Honeycutt to

be subrogated, under the law, to all of the rights of the pledgee, acquired at the time of the pledge, to the stock given in pledge to secure the note upon Honeycutt's paying the judgment rendered.

After judgment had been rendered against him, Honeycutt filed a motion for a new trial, in which he avers that, since the rendition of judgment against him, plaintiff received an offer to purchase the collateral pledged to secure the note, the offer being for $7,500, which amount, it is averred, is more than sufficient to pay the note, and in which he sets forth that he is informed and believes, and therefore alleges, that plaintiff has sold said collateral for the price offered, and, in the event plaintiff has not sold it, then it is because of the fact that plaintiff refused to accept the offer, in either of which events, it is averred, a new trial should be granted and the demands of plaintiff rejected. Attached to this motion is a letter from plaintiff's attorneys to Honeycutt's attorneys requesting them to advise Honeycutt that plaintiff had received an offer of $7,500 for the stock, attached to the note sued on, and that if Honeycutt felt unable to make a better offer, plaintiff would proceed to sell the stock as authorized by the pledge. The trial court overruled the motion for a new trial, and Honeycutt reserved a bill to the ruling. Honeycutt alone has appealed from the judgments rendered.

[1, 2] In support of their contention that plaintiff cannot demand payment of the note of Honeycutt, and at the same time retain the securities, counsel for Honeycutt call the court's attention to the following authorities, to wit: Succession of Pratt, 16 La. Ann. 357; McGuire v. Wooldridge, 6 Rob. 47; and New England Life Insurance Co. v. Randall, 7 So. 679, 42 La. Ann. 260, and other authorities. The authorities cited, however, do not support the position taken by counsel. They relate to the duty of the pledgee to keep the property pledged unimpaired, and to do no act that would affect the surety's or the indorser's right to subrogation, without the latter's consent. Counsel's position, in our opinion, is not tenable. An indorser or a surety on a note is not entitled to the possession of the collateral attached to it until he has paid the note, for until payment is made subrogation does not take place, and until then the holder of the note has a clear right, if it is not also his duty, to hold the collateral under the pledge given him. Civil Code, art. 2159. Hence it follows that the holder of the note may demand its payment of the indorser by suit or otherwise, and at the same time retain the securities pledged. And, since an offer to pay is not equivalent to payment, it cannot be said, because such an offer is made and the holder of the note refuses to surrender the collateral attached to it, upon the making of the offer, that the indorser is, by such refusal, discharged.

[3] We now come to the exception taken by Honeycutt to the overruling of his motion for a new trial. Whether or not plaintiff sold the collateral after the rendition of judgment, is left so uncertain by the motion, when whatever plaintiff did in that respect could have been made certain, that we think the trial judge, if for no other reason, was fully justified in overruling the motion in so far as it is based on the ground of the sale of the collateral. Moreover, the act of pledge, which is incorporated in the note indorsed by Honeycutt, authorizes plaintiff to sell the collateral at public or private sale. If plaintiff has sold it, and has not given the indebtedness for which Honeycutt bound himself proper credit, Honeycutt is not without remedy. On the other hand, if plaintiff refused to accept the offer to purchase the collateral, the refusal did not have the effect of discharging Honeycutt as indorser. Plaintiff was not called upon to accept the offer. We are not of the opinion that the trial judge

abused his discretion in overruling the motion. .

Honeycutt complains that the trial judge, in recognizing his right to subrogation on paying the amount of the judgment rendered, did not recognize his right to have delivered to him the securities pledged. It appears that, at the time the note sued on herein was signed and the pledge executed, the property pledged had been, and was still, held in pledge to secure another note, executed by a different maker in favor of plaintiff. W. R. O'Neal, one of the defendants herein, was the owner of the property pledged, and, had pledged it to secure the payment of a note, indorsed by him, in favor of plaintiff, and made by W. R. O'Neal, Inc., a corporation which seems to have been controlled by O'Neal. The fact that the property pledged in this instance has been pledged to secure different notes has given rise to differences between plaintiff and Honeycutt. These differences arise chiefly from the fact that the pledge, as to the note sued on, contains a provision to the effect that the proceeds of the sale of the collateral, attached to it, shall be applied first, to pay the costs of sale, second, to pay the note here sued on, and third, to pay any other indebtedness due by the maker of the note to plaintiff, Honeycutt contending that this provision makes the pledge, incorporated in the note here sued on, the ranking pledge. Plaintiff contends that these differences are properly not before the court, but, if they are an issue in the case, then it contends that it is not called upon to deliver the collateral to Honeycutt, on his paying the judgment rendered, for the reason that in reality only what remained of the collateral or its proceeds after the payment of the note executed by W. R. O'Neal, Inc., was pledged to secure the note here sued on, or, in other words, the pledge here under consideration is nothing but a second pledge.

[4] After mature consideration, we have concluded that we ought not to pass upon Honeycutt's right to the possession of the collateral at this time. His right to possession, if any, is dependent upon his being subrogated to the rights of plaintiff as pledgee. Subrogation, as we have said, does not take place until payment is made. It may be that Honeycutt will never pay the judgment rendered, or that it will never be satisfied out of his estate, or, if he does pay it, or it is so satisfied, that then the note of W. R. O'Neal, Inc., will have been paid, and that plaintiff then will have no desire to retain the collateral, or it may be that facts will arise before the judgment is paid by Honeycutt, or is satisfied out of his estate, should it be so paid or satisfied, as to make of the case, relative to the rights of possession, an entirely different one from the one now presented. The question as to Honeycutt's right to possession should be kept open until Honeycutt pays the judgment or it is satisfied out of his estate, so that the parties at interest may have a hearing on the facts as they exist when that event occurs, should it occur. It might have been better procedure, perhaps, had the lower court not entered a decree recognizing Honeycutt's right to subrogation on his paying the judgment rendered. The pleadings raised no such issue. However, the decree in that respect is virtually nothing more than the statement of a legal principle, and can do no harm. Plaintiff does not complain of it, and Honeycutt has not asked that it be stricken from the judgment, for the decree in that respect is not against his interest. While the pleadings do not raise the question as to Honeycutt's right to the possession of the property on his paying the judgment, yet, out of abundance of precaution, we shall amend the judgment so as to protect such rights as he may have in that respect, including such rights as he may have to demand, by virtue of subrogation, possession of the mortgage note, attached as col-

lateral to the note sued on, which note is not mentioned in the judgment.

For the reasons assigned, the judgment appealed from is amended by reserving to said Honeycutt such rights as he may have to demand and obtain possession of said collateral, including such right as he may have to demand and obtain, by virtue of subrogation, possession of said mortgage note attached to the note sued on, on his paying the judgment rendered herein, or upon its being satisfied out of his estate, and in all other respects said judgment is affirmed, appellant to pay the costs.

LAND, J., dissents.

O'NIELL, C. J. (dissenting). The collateral securities that were attached to the note when Honeycutt indorsed it were previously pledged to the bank to secure a debt of O'Neal. The bank intended to take only a second or subordinate pledge of the collaterals to secure the payment of the note indorsed by Honeycutt, and to retain in full force and effect the previous pledge of the same collaterals to secure the payment of the other debt of O'Neal. But, instead of taking a second or subordinate pledge to secure the note indorsed by Honeycutt, the bank used a printed form of note in which it was stipulated that the pledged securities, or the proceeds thereof, should be applied, after payment of the costs of selling them, first, to the payment of the note which Honeycutt indorsed, and, secondly, to the payment of any other debt then due, or that might thereafter become due, to the bank by the maker of the note.

Having indorsed the note with that stipulation in it, Honeycutt had the right to insist that the stipulation should be carried out. He could not compel the bank to sell the securities and apply the proceeds, first, to the payment of the note that he had indorsed, but he had the right to withhold payment of the note when the bank refused to surrender the pledged securities, so that he could sell them and apply the proceeds, first, to the payment of the note, and turn over the surplus, if any, to the bank, to be applied to any other debt due by the maker of the note. Honeycutt offered to pay the note if the bank would surrender the pledged securities so that he could sell them and carry out the stipulation as to how the proceeds should be applied. The bank refused to surrender the pledged collaterals on Honeycutt's paying the note, because the bank insisted upon holding the collaterals in pledge to secure, first, the payment of the other debt due by O'Neal. That was a plain violation of the stipulation in the note that the collaterals were pledged primarily to secure the note indorsed by Honeycutt, and only secondarily to secure any other debt due by the maker of the note.

In the judgment appealed from, the district court did not recognize Honeycutt's right, by payment of the note, to become subrogated in accordance with the stipulations in the note which he had indorsed, but declared that Honeycutt could be subrogated only to the rights of the pledgee bank as acquired at the time of the pledge, meaning at the time when the bank received the securities in pledge to secure the other indebtedness of O'Neal, which Honeycutt was not concerned with. The judgment in that respect is contrary to the stipulation in the note sued on, and virtually deprives Honeycutt of the protection that was guaranteed to him by the stipulation in the note.

The reservation in the decree amending the judgment appealed from reserving for future litigation or determination the question as to what right of subrogation Honeycutt may have after he has paid the judgment appealed from, or after it has been satisfied by seizure and sale of his estate, takes away from him all of the protection that was guaranteed to him by the stipulation in the note which he indorsed. The effect of the decree will be

that Honeycutt must first pay the note, or suffer it to be paid by seizure and sale of his estate, before he can even sue the bank to compel a compliance with the stipulation that was written in the note when he indorsed it. I cannot understand why Honeycutt should be relegated to another suit against the bank to enforce the right which was guaranteed to him by the stipulation in the note which he indorsed, or to determine whether he has any right of subrogation in that respect. The court's reservation of Honeycutt's right of action against the bank would. be very little consolation to him if the plaintiff in this suit were not as responsible as banks usually are. If the judgment rendered in this case is the law for a bank, it must be the law for an irresponsible person holding a note containing such a stipulation as this note contained when Honeycutt indorsed it.

I respectfully dissent from the majority opinion and decree in this case.