Robert E. George purchased from Wray-Dickinson Company on April 20, 1937, a Ford Tudor automobile for a consideration of $1059.69. He paid $195.69 cash, leaving a balance due of $864, represented by a note payable in twenty-four monthly payments of $36 each. The note was secured by a chattel mortgage on the automobile. Motors Securities Company, Incorporated, purchased the note, which was endorsed by Wray-Dickinson Company with recourse. Thereafter Aetna Insurance Company, defendant herein, issued a certificate of insurance to Motors Securities Company, Inc., and Robert E. George as their interest may appear, insuring the automobile against certain perils, including fire.
On January 11, 1938, Robert E. George sold the car to H.R. Jones, who expressly assumed the mortgage obligation and an endorsement of change of interest was issued by defendant insurer through its duly authorized agent, thereby transferring the interest in the insurance policy of Robert E. George to H.R. Jones. The policy of insurance *Page 317 
was in full force and effect on March 14, 1938, and the payments on the note had reduced it to $576, which amount remained unpaid. On that date the car was completely destroyed by fire. The holder and owner of the mortgage note, one of the insured under the policy issued by defendant, made repeated demands upon defendant for settlement of its claim, without any success. It then instituted this suit alleging the above facts and that the automobile was at the time it was destroyed well worth the sum of $576, the amount due on the mortgage note. It prayed for judgment in the amount of $576 and an additional sum of $144, being 25% of the principal amount as damages, and for $250 as reasonable attorney's fees.
Defendant admitted issuing the policy of insurance and that it was in effect at the time the car was destroyed by fire. It denied liability thereunder on the alleged grounds that the owner of the car purposely set it afire and allowed it to burn in order to discharge the balance due by him to plaintiff, and with the hope of collecting the insurance over and above the amount due plaintiff. It further alleged, in the alternative, should the Court hold it to be responsible to plaintiff, that plaintiff was required as a condition precedent to the institution of this suit, to transfer to defendant the note executed in part payment of the purchase price of the automobile and assumed by H.R. Jones, together with any securities connected therewith, and that plaintiff has refused and neglected to do so and in addition thereto has made no offer to minimize its loss by enforcing the collection of the note.
Prior to filing its answer, defendant filed an exception of no cause of action. It also filed a plea of nonjoinder which it undoubtedly has abandoned, and finally filed a plea of estoppel, based upon the above allegations made in answer. All exceptions and pleas were overruled below and the lower Court awarded judgment for plaintiff in the sum of $576 and $144 as damages, and $75 as attorney's fees. Defendant is now prosecuting this appeal and in this Court has filed a plea of peremption. It alleged plaintiff's cause of action has perempted for the following reasons:
(1) That plaintiff's suit is based on an existing, actual, enforceable and collectible indebtedness, secured by chattel mortgage on an automobile destroyed by fire, which fire occurred on March 14, 1938, and that such an actual and enforceable obligation is a pre-requisite to said cause of action; and
(2) That the note held by plaintiff and offered as the basis of this suit prescribed and became unenforceable on the 20th of December, 1942, which was before judgment was rendered and signed herein.
The allegation that the owner of the car deliberately destroyed it by setting it afire is not a sound defense against the claim made by plaintiff, who was insured in the same policy as was the owner, for the reason it provides that plaintiff is insured against loss by fire arising from any cause whatever. The other defense urged that plaintiff was required to assign the mortgage note it held and other securities if any to defendant as a condition precedent to the filing of this suit against defendant is without merit. This defense was the basis of the exception of no cause of action.
The policy of insurance, under the heading, Subrogation, provides:
"This Company may require from the named assured and/or purchaser an assignment of all right of recovery against any party for loss or damage to the extent the payment thereof is made by this Company, and if such payment shall be the limit of the Company's liability under the provisions of this policy, the named assured and/or purchaser shall immediately assign and deliver to this Company any or all certificates of title or ownership, conditional sale contracts or agreements covering the automobile upon which such loss has been paid and this Company shall be fully subrogated to all the rights of the named assured and/or purchaser thereunder."
Under the language of the above clause, Subrogation would not take place until the insurer paid plaintiff's claim, the theory being that by the terms of the policy the act of payment on the one hand and that of assignment on the other, were made concurrent and that, since the covenants were dependent, performance by one of the parties could not be compelled without performance or an offer to perform by the other. It is not a liability to pay, but an actual payment to the creditor which raises the right to be subrogated to his remedy. Succession of Wilson, 11 La.Ann. 294; Swan v. Gayle, 24 La.Ann. 498; Miller v. Bonner, 163 La. 332, 111 So. 776; Pons v. Yazoo M.V.R. Co.,131 La. 313, 59 So. 721; Guaranty Bank, etc., v. Canal Land, etc.,161 La. 253, *Page 318 108 So. 472; 60 Corpus Juris, Section 64, page 751; Revised Civil Code, Article 2160.
Since defendant, the insurer, refused to pay plaintiff's claim arising from the destruction of the car by fire, it was not defendant's right to demand or expect an assignment of the note held by the plaintiff against the owner of the car and plaintiff was not required, as a condition precedent, to assign said note to defendant before instituting suit against it under the policy of insurance.
The chattel mortgage note held by plaintiff is dated April 20, 1937, and is for the principal sum of $864, made payable to Wray-Dickinson Company, and endorsed with recourse by it to plaintiff. It provides for payment in twenty-four monthly installments of $36 each, the first being due May 20, 1937. It contains a provision that failure to pay any of the installments shall mature the note in its entirety and all the installments due thereon. Eight installments were paid, the last one being on December 20, 1937. When the January 20, 1938, payment was not made, all the remaining installments became due, therefore, on January 20, 1943, five years had elapsed and the note had prescribed unless there was an interruption of prescription, which is not claimed. Judgment in this case was signed and filed below on June 14, 1943 thereafter.
It is on these facts that defendant's pleas of estoppel and peremption are based. It contends that since plaintiff was obligated to assign to it the note endorsed by Wray-Dickinson Company, if and when it was forced to pay plaintiff's claim, it was also plaintiff's obligation to keep alive and intact the note, and that when plaintiff allowed the note to prescribe, thereby releasing a good endorser thereon, it lost its right to its claim against defendant. It further contends that the basis of plaintiff's claim is that it held a good, valid and enforceable claim and that when the note prescribed, the sole basis of plaintiff's suit was gone and its interest in the policy of insurance was lost.
Plaintiff did not allow the note to prescribe through carelessness. It knew that prescription was running and on June 12, 1942, more than seven months before it did prescribe, the attorney for defendant addressed a letter to the attorney for plaintiff in which he called attention to the right of subrogation, as set out in the insurance policy, and that the note would prescribe within a few months unless some action were taken by plaintiff to preserve the security. The letter in part is as follows:
"* * * We understand that installments were paid for 8 months. It may be that prescription began to run at the time of the original default, that is the 8th month after the execution of the note. * * *
"Inasmuch as the note will probably prescribe sometime in the next few months, it occurs to us that irrespective of the correctness vel non of our respective contentions with reference to the legal principles, it would be rather foolish to allow the note to prescribe; and it is our suggestion that the Motors Securities Company should take immediate steps to preserve the security.
"I am inclined to think that this is the legal obligation, but should you feel that such a step would in any way impair your client's cause of action against the Aetna, I readily agree on behalf of that Company that any steps taken in the direction indicated will not be considered as prejudicial to, or a waiver of, the Motors Securities Company, Inc.'s claim under the policy contract."
This letter also makes it clear that defendant knew the note was about to prescribe. Defendant was at that time indebted unto plaintiff under the policy of insurance it had issued. Its defense to plaintiff's claim was not a sound one in law. Defendant, at the time the above partially quoted letter was written, could have paid plaintiff its claim and had possession of the note to take any action it desired before it prescribed. Defendant had no right to or interest in the note until subrogation took place upon its paying the plaintiff's claim, which it has never done, and it could not have acquired by subrogation any greater right than plaintiff had at the time. 60 Corpus Juris, Section 64, page 751, and authorities cited thereunder.
If defendant, by its long delay in paying plaintiff's claim under the insurance policy and its persistent legal fight, although it had no legal defense to the merits of the case, has caused sufficient time to elapse for the note held by plaintiff to prescribe, as it has in this case, it has no one to blame other than itself. It could have paid the claim at any time and secured the note and all rights attached thereto.
Plaintiff is not suing defendant on the note, but on the contract of insurance. The only persons who can plead prescription of *Page 319 
the note are the makers and endorsers, neither of whom are parties to this suit, and the Court is without authority to supply the plea, therefore, the plea of peremption filed in this case is overruled. The lower Court correctly overruled the exception of no cause of action and the plea of estoppel for the reasons above assigned.
The case on its merits is not difficult. Proof was made that the car was completely destroyed by fire at a time when the policy was in full force and effect, and the lower Court found from the testimony that its value at the time it was destroyed was $576. A study of the record fails to disclose any error in this respect. It also allowed 25% of the principal amount as damages because of failure of the defendant to pay the claim within sixty days after proof of loss, and $75 as attorney's fees, which it found was a reasonable attorney's fee, under Act 59, Extra Session of 1921, however, the limits of liability fixed in the policy are as follows:
 "On the Limits of Recovery
"10. Limits of Liability — The limits of this Company's liability under this policy shall be as follows:
"(a) Under such insurance as covers the interest of both Named Assured and Purchaser, the limits of this Company's liability under this policy shall be provided in the General Conditions of the Policy to which this endorsement is attached; and
"(b) Under such insurance as covers the interest of the Named Assured only, this Company's liability shall be limited to an amount not exceeding that proportion of the unpaid balance of the contract selling price (the contract selling price being the cash selling price of the automobile, plus carrying charges) not more than sixty days overdue at the time of loss which the `Net cash selling price balance' (being the cash selling price less the down payment) bears to the `contract selling price balance' (being the contract selling price less the down payment), but if the down payment by the Purchaser was less than one-third of the contract selling price then the amount for which this Company is liable under this clause shall be reduced to the amount for which it would be liable if the down payment had been one-third of the contract selling price, but in no event to exceed the actual cash value of the automobile at the time of loss or the cost of its repair or replacement as stated in the General Conditions of the Policy to which this endorsement is attached."
Counsel for defendant in their brief have figured out the amount due under the above provisions of the policy to be as follows:
"From the chattel mortgage, in the record, the various figures mentioned can be obtained. Thus, as follows:
"`Contract selling price' (cash selling price plus carrying charges) .......................... $1,059.69 "`Unpaid balance contract selling price' (above less payments) 576.00 "`Cash selling price' ............................... 902.44 "`Down Payment' ..................................... 195.00 "`Net cash selling price' (Cash selling price less down payment) .............................. 707.44 "`Contract selling price balance' (less down payment) ............................. 864.00
"Since, however, the down payment was less than one-third of the contract selling price, the figures must be revised as follows:
"`Contract selling price' ........................... $1,059.69 "`Unpaid balance contract selling price' ............ 575.00 "`Cash selling price' ............................... 902.44 "`1/3 of contract selling price as down payment' (1,059.69 ÷ 3) 353.23 "`Net cash selling price' (cash selling price less 1/3 of contract selling price, $902.44-353.23) ................................. 549.21 "`Contract selling price balance' (contract selling price less 1/3 down payment $1,059.69-35.3.23) .............................. 706.46
"We therefore have the formula X being the limit of liability — thus: X is to $576.00 as $549.21 is to $706.44, which readily shows the Company's limit of liability to be $450.34, the maximum amount which can be recovered under the policy"
We are convinced they have arrived at the correct amount due under the policy.
It therefore follows that the judgment of the lower Court will have to be amended by decreasing the amounts awarded from $576, the value of the car, to $450.34; and the 25% damages from $144 to $112.58 and in all other respects, the judgment of the lower Court is affirmed; cost of appeal to be paid by appellee. *Page 320