(82 South. 887)

No. 23465.

CAROLINA PORTLAND CEMENT CO. v. CAREY & BOETTNER et al.

In re UNITED STATES FIDELITY & GUARANTY CO. et al.

(June 30, 1919.   Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS ⬤⟝376 — DUTY OF MUNICIPAL CONTRACTOR TO REQUIRE BOND FROM SUBCONTRACTOR.

A contractor to whom a sewerage and water board had awarded a contract was not obliged to exact a bond from subcontractors, and incurred no contractual obligation to parties furnishing material to a subcontractor, and no law imposed any obligation upon him in favor of such parties, for Act No. 134 of 1906, providing that the owner shall require of the contractor a bond for payment of furnishers of materials, etc., does not apply to the case of contract between contractor and subcontractor.

2. MUNICIPAL CORPORATIONS ⬤⟝347(2)—SUB-CONTRACTOR'S BOND GIVING NO RIGHT TO HIS MATERIALMEN.

Where bond of a municipal subcontractor, although reciting it was made in favor of materialmen, was expressly conditioned "for the * * * performance of said contract and the payment of all subcontractors under said subcontractors," one furnishing material to subcontractors had no right therein, in view of Civ. Code, art. 3039, as to strict construction of suretyship obligations.

3. MUNICIPAL CORPORATIONS ⬤⟝376 — PAYMENT BY CONTRACTOR TO SUBCONTRACTOR WITHOUT RESERVATION FOR HIS MATERIALMEN VALID.

A contractor is in no way to blame for having settled with subcontractors without having made a reservation for the claim of one furnishing material to the subcontractor, where he had no knowledge of the existence of the debt, and such party gave notice of it only some 60 days after completion of the work.

Suit by the Carolina Portland Cement Company against Carey & Boettner, Richard McCarthy, Jr., the United States Fidelity & Guaranty Company, and the Sewerage and Water Board of New Orleans. Judgment dismissing plaintiff's claims against the Sewerage Water Board, and allowing recovery against the other defendants, was affirmed by the Court of Appeal, and defendants McCarthy and the United States Fidelity & Guaranty Company bring certiorari. Judgment set aside, except in so far as condemning defendant McCarthy to pay the plaintiff the balance in his hands for defendants Carey & Boettner.

J. Zach Spearing, of New Orleans, for applicants.

Robert H. Marr, of New Orleans, for respondent.

PROVOSTY, J.   We transcribe as follows from the brief of plaintiff:

"Richard McCarthy, Jr., having contracted with the sewerage and water board, made a subcontract with Carey & Boettner for a part of the work. In this subcontract is the following provision:

" 'This contract is made subject to and in conformity with the provisions of Act 134 of the Legislature of the state of Louisiana for the year 1906, and in case of conflict between the provisions of this contract and the provisions of said Act No. 134 of 1906, the latter shall prevail.'

"To the subcontract is annexed as part thereof a bond, with the United States Fidelity & Guaranty Company as surety. The bond recites that the surety has 'taken full cognizance of the foregoing contract between Richard Mc-

Carthy, Jr., contractor, and Carey & Boettner, subcontractors,' and that it binds itself—

"'As surety for said subcontractors, in the full sum of twelve hundred and seven and $00/100$ dollars in favor of said contractor and all subcontractors under said subcontractors, workmen, laborers, mechanics, and furnishers of materials, jointly as their interests may appear, for the true and faithful performance of said contract, and the payment of all subcontractors under said subcontractors, as provided in Act 134 of the General Assembly of the state of Louisiana for the year 1906.'

"Plaintiff, having furnished Carey & Boettner material to the extent of $714, served attested accounts, and thereafter brought suit against Carey & Boettner, Richard McCarthy, Jr., the sewerage and water board and the United States Fidelity & Guaranty Company in solido.

"Carey & Boettner made no defense, and judgment was rendered against them as prayed for.

"The sewerage and water board answered:

"'That a complete settlement was had between it and the said Richard McCarthy, but that your respondent retained in its hands the sum of $714 to cover such claims as plaintiff herein might make under the attested account served on your respondent.'

"McCarthy denied liability beyond $60.30, that being the sum in his hands due Carey & Boettner at the time when plaintiff served its attested account upon him.

"The surety company denied liability on the ground that as there can be no lien upon public works, no action will lie against a surety company that has bound itself for the payment of a subcontractor's materialmen.

"The theory of the defense is that a bond not required by law cannot be enforced; and defendants further urge that we are suing on the statutory bond (Act 134 of 1906), and that we cannot recover, because that law does not apply to public works. Our reply is that we are not suing upon a statutory bond, but upon a conventional bond and a conventional obligation. Carey & Boettner and Richard McCarthy, Jr., contracted to be bound by the provisions of Act 134 of 1906; the surety company gave bond in favor of the materialmen, as their interests might appear. There is a wide distinction between the liability of those included within the terms of a statutory bond and the liability of those not so included, but who, by contract, agree to be governed by the provisions of the statute. In one case the law fixes the obligation of the parties; in the other case the parties fix it for themselves. Since the statute of

1906 does not require of the subcontractor any bond, but does require of the contractor a bond, it is plain that, when these three separate parties defendant agreed to be governed by the provisions of the act of 1906, they agreed that McCarthy's obligations should be those of the owner, and Carey & Boettner's those of the contractor. It follows, then, that under the provisions of the contract the failure of McCarthy to record the Carey & Boettner contract and bond makes him liable to the same extent that the surety would have been. The parties also agreed that the surety should be limited to such defenses only as the principal on the bond could make. McCarthy and the surety company, in making the act of 1906 a part of their contract, recognized that 'the purpose of this act is to require owners to secure bond with solvent and sufficient surety from the contractor for the protection of all parties in interest in the contract as their interest may appear, and which said surety is to stand in the place and stead of a defaulting contractor.' What we are trying to do is to hold the surety company to its contract, and to make it stand in the place and stead of the defaulting contractor, Carey & Boettner.

"There is an additional reason why the bond given is wholly conventional and not statutory. Act 134 of 1906 makes no provision for the taking of a bond by a contractor from a subcontractor; the only bond required is from the contractor, but I imagine that, if a contractor exacts from his subcontractor a bond, such a bond be for the skillful performance of the contract, or for the payment of laborers and materialmen, or for any other purpose that the contracting parties choose to impose, such bond, as a matter of law and of good conscience, is enforceable. When parties have entered into a contract not reprobated by law, or contrary to good morals, the courts are utterly without authority to strike therefrom any of its provisions, or to substitute for the agreement of the parties a subsequent agreement made for them by the courts. Since the bond is a conventional obligation, and since the surety company has been paid for entering into that obligation, and paid a premium based upon the risk assumed, it cannot now repudiate its contract and claim a discharge on the ground that Carey & Boettner furnished a bond not required by statute. Perhaps no statute required it, and Carey & Boettner would not have obtained their subcontract unless they had furnished bond, and the surety company would not have gotten its premium unless it had signed the bond required by McCarthy. McCarthy and Carey & Boettner knew that, by protecting

the materialmen as they did, they assured the carrying out of the subcontract, since, without that protection, the materialmen might refuse to furnish Carey & Boettner."

The case is here on writ of review to the Court of Appeal. That court affirmed the judgment of the district court, gave judgment in solido against McCarthy and the surety company for the amount of plaintiff's claim, with recognition of a lien for the payment of the judgment against the balance due McCarthy by the sewerage and water board, and dismissed the suit against the board.

[1] McCarthy was under no obligation whatever to exact a bond of Carey & Boettner, and never incurred any contractual obligation whatever to plaintiff, and no law imposes any obligation upon him in favor of plaintiff. The judgment against him is therefore without foundation.

[2] The defense of the surety company is broader than as stated hereinabove by counsel. It is, as we understand, that, inasmuch as said Act 134 of 1906 has no application whatever to the case of a contract between a contractor and a subcontractor, the bond sued on has to be dealt with as a purely conventional bond, and that, so considered, it does not purport to have been given for the payment of the materialmen but, quoting literatim:

"For the true and faithful performance of said contract, and the payment of all subcontractors under said subcontractors."

The above-transcribed provision of the contract between McCarthy, and Carey & Boettner, to the effect that their contract is made "subject to and in conformity with the provisions of Act 134 of 1906," is meaningless, since said act had no application whatever to their contract.

A law is read into a bond given under its provisions, but not into a bond which is not given under its provisions. In the latter case it enters into the bond only to the extent that it is expressly made to enter. "There are no presumptions against sureties; they can only be held to the precise terms of their obligations. C. C. art. 3039 [3008]. * * * 'Fide jussio est strictissimi juris, et non durat vel extenditur de re ad rem, de persona ad personam, de tempore ad tempus.' " Hennen, Dig. p. 522, No. 3. McCarthy was under no obligation whatever to exact this bond; the doing so was wholly gratuitous on his part. Therefore the bond has to be taken exactly as it is written; and as written it is only for the fulfillment of the contract and the payment of subcontractors.

An analogous case is that of State v. Jackson, 137 La. 741, 69 South. 158. There was in that case an express clause for the payment of the materialmen; but the bond was made in favor of the state alone. The state was the sole obligee, and the court held that the materialmen had no right of action on the bond. In the case at bar the bond is said to be made in favor of the materialmen, but to be conditioned only for the fulfillment of the contract and the payment of subcontractors.

If inferences could be allowed, an intention such as is contended for by plaintiff might readily be deduced; in fact, the inference to that effect would be strong. But the principle that suretyship is strictissimi juris stands in the way of all inferences.

[3] McCarthy is in no way to blame for having settled with Carey & Boettner without having made any reserve for plaintiff's claim. He did not know of the existence of the debt, and plaintiff gave notice of it only some sixty days after the work had been completed.

The judgment must be set aside, except in so far as condemning McCarthy to pay to plaintiff the balance in his hands; and inasmuch as he has been willing all along to turn this balance over to plaintiff, the costs of the suit must be borne by plaintiff.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal, as well as that of the district court, herein be set aside, except in so far as condemning Richard McCarthy, Jr., to pay to the plaintiff the balance of $60.30 in his hands for Carey & Boettner, and that the plaintiff pay the costs of this suit.