BYRNES, Judge.
This is an appeal from a Summary Judgment granted in favor of United States Fidelity and Guaranty Company (USF & G). The plaintiff, Emile M. Babst Company (Babst), appeals on the ground that the intent of the parties to the payment bond contract remains in dispute. We disagree and affirm the holding of the trial court.
This case arises from the construction of a steel mill in La Place. Louisiana Bayou Steel Corporation of La Place (“Bayou Steel”), owner of the project, entered into a contract with Dillinger Engineering Services for Industry, Inc. (“DESI”) engaging DESI as the general contractor for construction of the mill. DESI in turn engaged Atlas Erection Company Inc. (“Atlas”), as subcontractor, to construct certain components of the project. Atlas, in turn, entered into sub-subcontracts with Babst.
In the DESI/Atlas subcontracts, DESI required that Atlas provide a payment and performance surety bond. Atlas therefore contracted with USF & G to act as its surety. Atlas failed to pay their subcontractors, and after making amicable demands for payment Babst filed this suit. At no time did Babst file a lien against the owner’s property. Shortly thereafter, Atlas filed for bankruptcy and all secured creditors were paid from the liquidation proceeds.
Subsequent to filing its initial suit, Babst filed a supplemental petition adding DESI and Bayou Steel as party defendants. DESI and Bayou Steel filed Exceptions of no cause of action and no right of action because Babst had not filed a timely lien against the property. Those exceptions were heard in 1982 and sustained by the Trial Court. No appeal was pursued from that dismissal of the claims against Bayou and DESI.
USF & G then filed a Motion for Summary Judgment seeking dismissal of the Babst petition against USF & G on the ground that the payment portion of the USF & G bond, (which is part of the DESI/Atlas contract) only provided for the payment of parties “having lien rights against the Owner’s property”. After additional discovery, and exhaustive briefing and oral arguments, the trial court ruled in favor of USF & G. In pertinent part, the reasons for judgment stated:
The court finds that there are no relevant facts in genuine dispute as to the issue of interpretation of the “payment bond” contained in the contract between DESI and Atlas. The contract is before the Court and all of the relevant facts pertaining thereto are before the court in proper affidavit and deposition form.
The court notes that as a matter of law its duty is to determine “the common intent of the parties”. La.C.C.Art. 2045. The court finds that the bond language when read in context, is clear, unambiguous and should be given the interpretation offered by USF & G, i.e., that the intention of the parties was to afford bond coverage only in favor of claimants having lien rights against the Owner’s property. Furthermore, even should the language in any manner be deemed ambiguous, when considered in light of the uncontradicted evidence as to the intention of the parties to the contract, the same result is derived.
Summary judgment may be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there *584 is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. Art. 966. The parties admit that there is little or no dispute as to the operative facts of this case. The conflict arises over the scope of Paragraph 30.1 of USF & G's surety bond.
Babst contends that the intent of the parties to the surety contract is ambiguous and argues that the verbiage of the payment bond extends coverage to all subcontractors who may have the right to file a lien. To the contrary, USF & G asserts that the contract was intended to protect the owner of the property (Bayou Steel) from those subcontractors who in fact perfected liens against defaulting contractors like Atlas.
As a surety of a sub-contractor, USF & G is a conventional surety whose obligations are governed by contract law rather than general suretyship law. La. R.S. 9:4812; Carolina Portland Cement Co. v. Carey and Boettner, 145 La. 773, 82 So. 887, 889 (1919); Jimco, Inc. v. Gentilly Terrace Apts., Inc., 230 So.2d 281, 284-285 (La.App. 4th Cir.1970); Gateway Barge Line, Inc. v. R.B. Tyler Co., 175 So.2d 867, 869 (La.App. 1st Cir.1965).
The contract in question is between Atlas, as the subcontractor, and DESI, as the general contractor. It provided payment to sub-subcontractors in case of bankruptcy on either party’s behalf. The appellant, therefore, is a third party beneficiary to the contract. In Arrow Trucking Co. v. Continental Insurance Co., 465 So.2d 691, 698 (La.1985), the Supreme Court held:
It is well settled that for a person to successfully maintain an action under a contract to which it is not a party the contract must clearly express the contracting parties’ intent to stipulate some advantage for that (third) person. La.C.C. Arts. 1890 and 1902. Fontenot v. Marquette, supra [258 La. 671, 247 So.2d 572 (1971)]; Teacher’s Ret. System of La. v. La. State Emp. Ret., 444 So.2d 193 (La.App. 1st Cir.1983). (emphasis added)
Thus, for Babst to recover under USF & G’s bond, the contract between DESI and Atlas must expressly stipulate that the contracting parties intended the bond’s coverage to extend to Babst.
Paragraph 30.1 of the contract in question provides that USF & G is obligated:
jointly, severally and in solido with the Sub-Contractor ... in favor of the Contractor and all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of materials, machinery or fixtures, and all persons and entities who may have lien rights against the Owner’s property, as their interests may appear, for the payment of all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of materials, machinery or fixtures and persons and entities having lien rights against the Owner’s property, (emphasis added)
Civil Code Article 2045 and 2046 provides the following pertinent guidelines for determining the intent of the contracting parties:
2045 — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
2046 — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
We find that the language of the paragraph 30.1 is clear and explicit. The first section of the clause defines the general category of persons covered by USF & G’s obligation. The remainder of the clause further defines the class of persons protected by this obligation and limits payment to those “having lien rights” on Bayou Steel’s property. Babst’s failure to file a lien prevents it from recovering on the bond.
In our opinion, the bond was clearly intended to protect the owner’s property from the adverse effects of liens filed by subcontractors who were not paid by the contractor. If no lien is perfected, the risk that the owner’s rights or use of the prop *585 erty will be encumbered by liens does not arise. To extend the bond coverage to those who did not perfect liens would be contrary to the intent of the parties. The bond, therefore, does not apply to Babst.
The appellants urge this court to consider the decision in Miller v. Bonner, 163 La. 332, 111 So. 776 (1927). In Miller, the Supreme Court concluded that the language of the bond provided coverage to subcontractors who failed to file a lien. Although the language is similar to the language in the instant case, one decisively distinguishing feature exists. The Miller bond does not contain the critical language “all entities having lien rights against the owner’s property.” Thus in Miller the contract never limited coverage to those possessing a perfected lien. The case does not apply to these circumstances.
For the foregoing reasons we affirm the decision of the trial court with cost of the appeal to be taxed to the appellant.
AFFIRMED.