497 So.2d 1358 (1986)
EMILE M. BABST COMPANY, INC.
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
No. 86-C-0888.
Supreme Court of Louisiana.
November 24, 1986.
Laurence D. Rudman, Rudman, Howard, Laudumiey & Mann, D. Douglas Howard, Jr., New Orleans, for applicant.
Joe Inabnett, Jack Alltmont, Jerome Lipsich, Nancy Collins, Sessions, Fishman, Rosenson, Borsfontaine & Nathan, New Orleans, for respondent.
MARCUS, Justice.[*]
This lawsuit involves construction contract claims arising from the construction of a steel mill in LaPlace, Louisiana. Bayou Steel Corporation of LaPlace (Bayou Steel), owner of the project, entered into a contract with Dillinger Engineering Services for Industry, Inc. (DESI), engaging DESI as the general contractor for the construction of the mill. DESI, in turn, engaged Atlas Erection Company, Inc. (Atlas) as subcontractor to construct several components of the project. Pursuant to two of these subcontracts, Atlas entered into sub-subcontracts with Emile M. Babst Company, Inc. (Babst).
In each subcontract between DESI and Atlas, DESI required that Atlas provide a performance and payment surety bond. In satisfaction of this requirement, Atlas engaged USF & G. DESI, Atlas and USF & G executed the two subcontracts. Pursuant to these subcontracts, Babst performed work as a sub-subcontractor. The surety bonds issued by USF & G and contained in the two subcontracts are identical, except for the amount of liability assumed by the *1359 surety in each bond.[1] The surety bond clause provides as follows:
30.1 And now to these presents personally comes and intervenes United States Fidelity & Guaranty Company (the "Surety") declares that it takes full cognizance of the terms and conditions of this agreement as well as the plans, specifications and other Subcontract Documents and that it hereby binds itself, jointly, severally and in solido with the Subcontractor and in favor of the Contractor, in the amount of $650,000.00 [waste gas subcontract] [$450,000.00 in electric furnace subcontract] for the faithful performance of all obligations of the Subcontractor arising under this contract and the other Subcontract Documents (including but not limited to the faithful performance of all of the Work) and in favor of the Contractor, and all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of materials, machinery or fixtures, and all persons and entities who may have lien rights against the Owner's property, as their interests may appear, for the payment of all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of materials, machinery or fixtures and persons and entities having lien rights against the Owner's property.
In 1982, after completion of the construction project, Babst filed suit against Atlas and its surety, USF & G, seeking to collect amounts allegedly due it under the Atlas/Babst sub-subcontracts. Babst filed a supplemental petition adding as defendants DESI and Bayou Steel, which parties filed exceptions of no cause and/or right of action asserting that the suit should be dismissed as to them because Babst had not timely filed a lien against the property of the project owner. The trial judge sustained the exceptions. No appeal was taken from that judgment. Shortly after Babst instituted these proceedings, a settlement agreement between DESI and Atlas was executed in which these parties agreed to settle all claims relative to the final payment to be made to Atlas under the subcontract between them. Pursuant to this agreement, the settlement amount of $900,000 was paid by DESI to Atlas. Thereafter, Atlas instituted proceedings in the United States Bankruptcy Court for relief under the provisions of Chapter 7 of Title 11 of the United States Bankruptcy Code. Atlas was subsequently liquidated without any distribution or payment to Babst. Accordingly, USF & G was the sole remaining defendant in the lawsuit.
USF & G then filed a motion for summary judgment based upon its interpretation of the verbiage of the surety bond. USF & G sought dismissal of the Babst petition against it on the ground that the bond provides only for the payment of claims of parties "having lien rights against the Owner's property." USF & G contended that since Babst did not timely file a lien against the project owner's property, the bond afforded it no coverage. The trial judge initially denied the motion; however, after further discovery, USF & G reurged its motion for summary judgment supported by the deposition of a DESI executive and the affidavit of an Atlas executive, both to the effect that it was the intent of DESI and Atlas in requiring and providing the surety bond to protect the project owner's property from lien claims. Babst also filed a motion for partial summary judgment claiming that, as a matter of law, the surety bond issued by USF & G imposed upon it an obligation to pay Babst's claims against Atlas.
The trial judge granted summary judgment in favor of USF & G finding the language in the bond to be clear and unambiguous. He interpreted that language to afford coverage only in favor of claimants having lien rights against the project owner's property. The trial judge denied Babst's motion for partial summary judgment. Babst appealed. The court of appeal affirmed.[2] On Babst's application, we *1360 granted certiorari to review the correctness of that decision.[3]
The Code of Civil Procedure provides that a summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The sole issue before this court, therefore, is whether as a matter of law coverage under the bond issued by USF & G extends to the claim of Babst against Atlas where Babst has failed to timely file a lien against the project owner's property.
USF & G is a conventional surety whose obligations are governed by Louisiana contract law, rather than a statutory surety whose obligations are governed by the Private Works Act because it is a surety of a subcontractor (Atlas), rather than a general contractor (DESI). La.R.S. 9:4812; Carolina Portland Cement Co. v. Carey and Boettner, 145 La. 773, 82 So. 887 (1919).
A conventional bond must be interpreted so as to give effect to the common intent of the parties.[4] The language used in the contract must be deemed to fully express the parties' intent when the words are clear and explicit and lead to no absurd consequences.[5] When the language used to express intent is susceptible of different meanings, intent must be interpreted to reflect that which best conforms to the object of the contract.[6] Likewise, contract provisions must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole.[7] Furthermore, doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.[8]
The conflict between Babst and USF & G arises from their respective interpretations of the verbiage of the surety bond furnished by USF & G in paragraph 30.1 of each of the contracts in question. Based upon the above guidelines for the interpretation of this surety bond, we believe (as did the lower courts) that the language used clearly expresses the intent of the parties (DESI, Atlas and USF & G) to provide a bond for the payment of those claims against Atlas in which claimants have timely filed liens against the project owner's property. The agreement obligates USF & G
jointly, severally and in solido with the Sub-Contractor (Atlas) ... in favor of the Contractor (DESI), and all Sub-Contractors, Journeymen, Cartmen, Truckmen, Workmen, Laborers, Mechanics and furnishers of materials, machinery or fixtures, and all persons and entities who may have lien rights against the owner's property, as their interests may appear, for the payment of all Sub-Contractors, Journeymen, Cartmen, Truckmen, Workmen, Laborers and Mechanics and furnishers of materials, machinery or fixtures and persons and entities having lien rights against the owner's property. [Emphasis added.]
We believe that the "may have lien rights" clause in the first part of the bond provision excerpt modifies each category of claimant beginning with "all Sub-Contractors" in whose favor USF & G is obligated. This clause defines the class of claimants with a right of action against USF & G. In other words, these parties may sue USF & G directly, and USF & G must defend their claim of a right to be paid by USF & G as surety of Atlas. We further conclude that the phrase "having lien rights" contained *1361 in the latter part of the bond excerpt modifies each category of claimant directly preceding the phrase and defines the class of claimants which USF & G is ultimately bound to pay. We do not believe that a claimant may be described as having lien rights unless he timely files a lien pursuant to the provisions of the Private Works Act. Therefore, although Babst had a right of action against USF & G as a subcontractor who may have lien rights, Babst was unable to sustain its burden of proving a cause of action against USF & G for liability under the bond provision because Babst failed to timely file a lien against the project owner's property.
Our interpretation of the language in the bond is further supported by the circumstances in this case. DESI, as general contractor, had a duty to keep the owner's property free of liens by paying off all such liens if necessary. Thus, its motive in requiring a surety bond was to protect itself from liability for the payment of liens filed against the owner's property. Atlas, in providing the surety bond required by DESI had no economic motive to broaden the scope of coverage of the surety bond. This is especially true in light of the requirement by USF & G that a continuing guaranty be provided by the principals of Atlas against all liability which USF & G might incur as surety of Atlas. USF & G, as issuer of the bond, had no motive to provide coverage broader than that desired by DESI and Atlas. By agreeing to guaranty only those claims against Atlas in which the claimant has filed a lien against the project owner's property,[9] USF & G is afforded public records notice of these claims. Upon payment of such lien claims, USF & G would be in position to preserve its reimbursement rights as surety against Atlas by attaching any unpaid contract funds still owing to Atlas. In this case, had Babst timely filed a lien against the project owner's property, USF & G would have had a right to attach the $900,000 in contract funds which were at that time still unpaid to Atlas.
We find that the language in the surety bond issued by USF & G is clear and unambiguous. It clearly evidences the surety's intent to be bound to pay on behalf of its principal, Atlas, those unsatisfied claimants as described in the bond, who timely filed liens against the project owner's property. We further find that even if the language was ambiguous (fairly susceptible of different meanings), the law of contracts mandates that the agreement be interpreted to conform to the object of the contract. The evidence is uncontroverted that the contracting parties (DESI, Atlas and USF & G) intended to provide a bond which would insure payment of only those claims in which the claimant timely filed a lien against the project owner's property. Hence, there are no genuine issues as to material fact, and USF & G is entitled to judgment as a matter of law. The trial court properly granted summary judgment. The court of appeal correctly affirmed.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, C.J., dissents.
DENNIS, J., dissents with reasons.
NOTES
[*] Pike Hall, Jr., associate justice ad hoc, sitting for Associate Justice Harry T. Lemmon.
[1] We will hereafter refer to the bonds in the singular.
[2] 487 So.2d 582 (La.App. 4th Cir.1986).
[3] 489 So.2d 909 (La.1986).
[4] La.Civ.Code art. 2045.
[5] La.Civ.Code art. 2046.
[6] La.Civ.Code art. 2048.
[7] La.Civ.Code art. 2050.
[8] La.Civ.Code art. 2053.
[9] While suretyship cannot exceed what may be due by the debtor, it may be contracted for a part of the debt only or under more favorable conditions. La.Civ.Code art. 3037.