SHORTESS, Judge,
dissenting.
The majority opinion cites articles of the Civil Code which did not exist, in their present state, at the time these contracts *258 were confected. See LSA-C.C. arts. 1825, 1826, and 1828. Current Code articles 1825, 1826, and 1828 differ in substance from the same numbered articles prior to the 1984 revision of Titles III and IV of Book III of the Civil Code of 1870. See Acts 1984, No. 331, § 1. The opinion at footnote 4 explains that the revision comments indicate these particular articles[1] effect no change in the law. There are 301 code articles in revised Titles III and IV, 229 of which purport, according to the comments, not to change the law. This number includes four of the five new articles on error, previously comprised of 27 code articles, and LSA-C.C. art. 2002, which did not exist prior to the revision.[2] It has been suggested that the redactor’s reassurance that the new articles effect no change in the law is “often inaccurate.” See Palmer, The Death of a Code — The Birth of a Digest, 63 Tul.L.Rev. 222, 258 (1988). Mindful of the foregoing, all reference to articles of the Civil Code in the remainder of this dissent will be to those articles of the Civil Code of 1870 in effect at the time these parties entered into their various agreements, unless otherwise specified.
LSA-C.C. art. 2160 provides two means by which conventional subrogation of a third person to the rights of a creditor may be effected: when the creditor subrogates the third person, which must be express and contemporaneous with the payment; or when the debtor borrows to pay his debt and subrogates the lender, which requires that both the act of borrowing and the receipt from the creditor be in authentic form and recite, respectively, the purpose of the loan and origin of the funds.
Wilkin executed documents with both the creditors (“Subrogation of Rights”) and the debtor (“Promissory Note”).[3] The document between Wilkin and Watkins (“Promissory Note”) is not an authentic act and therefore fails under LSA-C.C. art. 2160. The subrogation agreements executed between the various creditors, Wil-kin, and Watkins (signatory in each case in his capacity as president of Dev Con), however, is valid as to form under LSA-C.C. art. 2160.
The reasoning of the majority necessarily rests on an extraneous defect, more specifically the execution of the promissory note prior to the execution of the subrogation agreements. The majority concludes that because Watkins executed the promissory note on December 5,1983, and the subrogation agreements on December 6, 7, 8, and 9, respectively, 1983, the funds were actually loaned to Watkins individually, even though the funds were delivered directly to Dev Con’s creditors in accordance with the provisions of LSA-C.C. art. 2160. The reasoning concludes, therefore, that Wilkin is not a “third party” within the meaning of article 2160.
This very technical reasoning, however, is based upon an ambiguous document. The promissory note was drafted by Wil-kin, a layman, and does not make clear whether Watkins is acting in his individual capacity or as president of Dev Con. The first paragraph recites that Watkins promises to “repay ... the principal amount advanced to [him],” suggesting that, as the majority holds, Watkins borrowed the monies individually. The third paragraph refers to the four subrogation agreements, however, which Watkins signed as president of Dev Con. The fourth paragraph obligates Dev Con (not a signatory to the agreement) to pay legal expenses and attorney fees should same be incurred in collecting the note and recites that Watkins’ repayment will be made when “construction draws are received” (presumably Dev Con to be the recipient of the draws).
When contract language is susceptible of different meanings, the parties’ intent must be interpreted in a manner that best *259 conforms to the object of the contract. Emile M. Babst Co. v. United States Fidelity and Guaranty, 497 So.2d 1358,1360 (La.1986). Additionally, the various provisions of a contract must be interpreted in light of each other so that each is given the meaning suggested by the whole. 497 So.2d at 1360. Moreover, where ambiguity exists, an agreement may be explained by reference to other contracts on the same subject between the same parties. Succession of Lindsey, 477 So.2d 148 (La.App. 1st Cir.1985); see also 497 So.2d at 1361.
The ambiguity can be dispelled by reference to the subrogation agreements executed in the days following the execution of the ambiguous promissory note. The object of all these agreements was the same: the creation of subrogation in Wilkins’ favor pursuant to LSA-C.C. art. 2160. The subrogation agreements are express on this point and go beyond what is required because Watkins, in his capacity as president of Dev Con, the debtor, assented. Moreover, both Wilkins and Watkins testified that Dev Con, not Watkins, was to be the debtor. I disagree with the majority’s holding but do not express an opinion as to the validity of the liens Wilkin filed as surbrogee of the various suppliers or the liability he alleges to have resulted from those liens on behalf of the Pontchatoula Housing Authority under LSA-R.S. 38:2241.
For these reasons, I respectfully dissent.

. Reference is made to LSA-C.C. arts. 1826 and 1828 without mentioning LSA-C.C. art. 1825.

. LSA-C.C. art. 2002 requires an obligee to mitigate his damages from non-performance. The comments indicate that it “does not change the law" but rather "expresses a natural consequence of the principal stated in C.C. art. 1903 (1870).” LSA-C.C. art. 2002, Comment c.

.The promissory note is unclear as to whether Watkins was acting on his own behalf, individually, or as president of Dev Con, the debtor. This ambiguity will be addressed more fully hereinafter.