SHORTESS, Judge.
James W. and Dixie Reagan Winborn (plaintiffs) brought this suit for injunctive relief with a petition filed March 31, 1983, against both the City of Baker (the city), and Douglas and Terri Howland (defendants). The thrust of the suit against the city were allegations that it wrongfully rezoned defendants’ residential premises to allow commercial activities thereon, namely, an automobile repair shop.
By amended petition dated July 22, 1983, plaintiffs specifically complained of the following:
1. Unusually loud and offensive noises including revving of engines, hammering, knocking, etc., occuring (sic) on numerous occasions both during the day and late at night;
2. Car lights and outdoor lights being directed toward the Plaintiffs’ bedroom window during the night; and
3. The erection of a security light within 20 feet of the Plaintiffs’ bedroom window. The defendant, Douglas How-land, specifically refused to allow Gulf States Utilities onto his property to install a shield on the security'light at no cost to the defendant which would have limited the light directed at the Plaintiffs’ bedroom window and improved the lighting on the Howland Property.
4. The operation of a commercial exhaust fan directed toward the Plaintiffs’ property causing unusually loud noises and spreading offensive fumes, smoke and exhaust over the Plaintiffs’ property.
5. Other acts which will be shown at the trial of this matter.
Plaintiffs sought a permanent injunction requiring removal of the metal building erected for purposes of the commercial activities complained of. A consent judgment entered March 19, 1986, provided, in part pertinent to the matter before us:[1]
A permanent injunction is issued herein as follows:
(a) the hours of operation of the business conducted by Douglas Howland and Terri Howland at 4224 Groom Road in Baker, Louisiana shall be and are hereby limited to 8:00 a.m. until 5:30 p.m. on weekdays and 8:30 a.m. until noon on Saturdays.
[[Image here]]
(c) Douglas Howland and Terri How-land are hereby ordered to remove the two existing exhaust fans presently located in the west wall of the automobile repair shop located at 4224 Groom Road. In the event that the Howlands elect to relocate the exhaust fans, rather than merely remove them, they shall only relocate them on the east side of the automobile repair shop. The fans must be moved within thirty (30) days of the date of the stipulated judgment, or no later than April 18, 1986.
*898 A pleading captioned “Petition for Damages and for Contempt and Rule Nisi for Contempt” was filed July 31, 1987, by plaintiffs against Douglas Howland and Terri Howland, asserting intentional violations of the permanent injunction by working on vehicles beyond the agreed upon hours of operation and failing to remove one of the fans.[2] The trial court dismissed plaintiffs’ petition with written reasons for judgment, finding “minor deviations from the activities allowed ... over a prolonged period of time;” yet it determined these deviations to be “de minimus ... and therefore not sufficient to constitute contempt. ...”
The trial court initially dismissed the petition in its entirety but, upon a motion for new trial, found contempt with regard to defendants’ failure to remove the fan and ordered its removal. Plaintiffs bring this appeal, asserting error in the trial court’s failure to find defendants in contempt of the injunction (with regard to activities beyond the specified hours), failure to provide “specific sanctions” for future violations, failure to award damages, and failure to allocate all costs of the proceedings against defendants.[3]
With respect to the trial court’s failure to provide future sanctions, we note that plaintiffs’ petition does not pray for such relief. Moreover, it would seem both speculative and unnecessary at this juncture; further proceedings would be required to determine if violations had occurred and it would be more appropriate to impose sanctions at that time.
With respect to the remaining specifications of error, we observe that the trial court did find “minor deviations” which were characterized as “de minimus.” The legal consequences of this finding of fact are what are at issue herein because the trial court appears to have held that these infractions were not violations of the injunction within the meaning of LSA-C.C.P. art. 3611 and LSA-R.S. 13:4611. Plaintiffs assert, however, that these activities constitute “operation of the business” within the meaning of the permanent injunction so as to constitute violations.[4] These activities include accepting deliveries of automobiles and parts; cleaning up at the close of the day; working on or test driving or otherwise inspecting automobiles (for the purposes of determining what repairs are needed), whether gratis or for remuneration; and maintaining the books (or any other type of paperwork required by the business).
Defendant (Douglas Howland) defines operation of the business as “working on automobiles for ... paying customers that involves a bunch of noise.” His testimony reveals that this definition excludes cleaning up and taking care of the equipment, bookkeeping, and test driving or otherwise inspecting automobiles.
The trial court’s oral reasons for judgment (amending the initial judgment) imply that the parties either could or should amend the consent judgment to define “operation of the business.” We believe this was the very issue to be decided in the proceedings for contempt. Some definition of the term was arrived at by the trial court inasmuch as bookkeeping was specifically found not to constitute operation of the business and other, unspecified, activities (the “minor deviations”) were determined to be operation of the business.
A consent judgment creates a conventional obligation, a contract, between the parties. See LSA-C.C. art. 1906. See also Cheramie v. Vegas, 468 So.2d 810 (La.App. 1st Cir.), writ denied, 470 So.2d 122 (1985). Its cause, LSA-C.C. art. 1967, is the desire to adjust differences and terminate litigation. Cheramie, 468 So.2d at 812. The construction of this contract, like any other, is subject to the rules for interpretation *899 of contracts provided in the Civil Code. See LSA-C.C. art. 2045 through 2057.
In. construing a contract, we attempt to discern the common intent of the parties. LSA-C.C. art. 2045. The term “operation of the business” must be given its “generally prevailing meaning” and, if susceptible of different meanings, must be given the meaning that conforms to the object of the contract. LSA-C.C. arts. 2047 and 2048. See also Emile C. Babst & Co. v. U.S.F. & G., 497 So.2d 1358 (La.1986).
The record is replete with evidence that defendant received deliveries, returned automobiles to customers, cleaned up at the close of the day, and worked on automobiles beyond the specified hours. We believe these activities are those determined to be the “minor deviations.” That these activities fall within the definition of “operation of the business” seems consistent with the prevailing meaning of operation of an automobile repair business. Moreover, a reading of the initial petition suggests that such interpretation is consistent with the object of the contract. Defendants’ restrictive interpretation of operation of the business so as to exclude working on automobiles of family members, employees, or non-paying customers, cleaning and moving equipment at the end of the day, accepting deliveries of automobiles or parts, or any other labors that would normally be undertaken in the operation of an automobile repair business, requires tenuous distinctions that we cannot believe plaintiff or defendant reasonably intended.
The trial court concluded the violations were not so flagrant as to require the imposition of sanctions. We cannot find clear error here. The function of an appellate court in reviewing such a determination is not to substitute its own judgment but, rather, to review the exercise of the trial court’s discretion. Reck v. Stevens, 373 So.2d 498 (La.App.1979). While we may not have reached the same conclusion, we are not prepared to say the trial court committed an abuse of discretion. For the same reasons, we find no clear error in the trial court’s failure to award damages.
With regard to the allocation of costs, we reverse and assess all costs to defendants. See Marcel v. Allstate, 536 So.2d 632, 637-638 (La.App. 1st Cir.1988), writ denied, 539 So.2d 631 (1989).
AFFIRMED.

. The consent judgment also required the City of Baker to pay $10,000.00 in damages and the Howlands to pay $2,000.00. Additionally, both plaintiffs and defendants were enjoined from "harassing each other.”

. No violation is alleged as to the City of Baker, and it is not a party before us on appeal.

. Following the motion for new trial, the court allocated 75% of the costs to defendants and 25% to plaintiffs.

.The parties are not in dispute that the "business” is that of automobile repair, although the term is nowhere defined or made more specific in the language of the consent judgment.